(579 P.2d 1217)

No. 49,116

WINSLOW BEAVER and KENNETH E. GOODMAN, Individually and on behalf of all others similarly situated, *Appellants,* v. F. T. (JIM) CHAFFEE, Sheriff of Shawnee County, Kansas, and ROLAND G. HUG, ROBERT D. WELLSHEAR, and MARY L. BOGART, Commissioners of Shawnee County, Kansas, and ROBERT R. RAINES, Secretary of Corrections, State of Kansas, *Appellees.*

Opinion filed June 9, 1978.

*Thomas M. Blumenthal,* of Legal Aid Society of Topeka, for the appellants.

*Joseph W. Zima,* of Topeka, for the appellee F. T. (Jim) Chaffee; *Frank L. Johnson* and *Donna Voth,* of Topeka, for the commissioners of Shawnee county, appellees; and *Curt T. Schneider,* attorney general, and *Roger M. Theis,* assistant attorney general, for the appellee Robert L. Raines.

Before FOTH, C.J., SPENCER, and SWINEHART, JJ.

FOTH, C.J.: This is a class action on behalf of inmates of the Shawnee county jail challenging the conditions of their confinement. Defendants are the sheriff and commissioners of Shawnee county, who are directly charged by statute with operating and maintaining the jail, and the state secretary of corrections, who has certain jurisdiction over sanitary and safety conditions in all jails under K.S.A. 75-5228. The trial court dismissed the action for lack of jurisdiction, and the plaintiffs have appealed.

The action had its genesis in two separate habeas corpus actions filed in 1974 by the named plaintiffs, Winslow Beaver and Kenneth E. Goodman. At the request of the trial court the Legal Aid Society of Topeka, Inc. assumed the representation of plaintiffs. A new petition was filed in December, 1974, with both plaintiffs purporting to represent all past, present and future jail inmates, as a class under K.S.A. 60-223. The relief sought was declaratory and injunctive in nature. The actions were consolidated, and on June 19, 1975, the trial court sustained plaintiffs' motion for class certification.

The next year and a half were consumed in discovery. During this time all judges of the Shawnee county district court disqualified themselves, and the case was assigned to the Honorable Ronald D. Innes, of Manhattan.

An amended petition was filed by leave of court in February, 1977, containing a shotgun blast of some 58 separately numbered "factual claims." With some effort these may be roughly categorized into a half-dozen overlapping areas: (1) The physical

facilities were alleged to be inadequate, resulting in overcrowding and conditions hazardous to health and safety. (2) The jail's personnel are said to be inadequate in number, training and ethnic mix, resulting in beatings and sexual assaults among the inmates. (3) It is claimed that the inmates are not properly classified and segregated, particularly by age and sex, and are not afforded proper exercise or programs aimed at vocational training or other types of rehabilitation. (4) The food is said to be of poor quality, poorly prepared, and infested with insects and vermin. (5) The policies and procedures for governing the jail are alleged to be vague, and not properly followed anyway, resulting in harsh and arbitrary discipline. (6) It is alleged that inmate mail is improperly censored, and facilities for attorney-client conferences are inadequate.

The list is not all-inclusive, but covers the main areas of complaint. The first five are said to result in cruel and unusual punishment, the last to impinge on inmates' rights of free speech and to counsel.

After all defendants had answered the amended petition the court on its own motion dismissed the action, concluding: that it had no jurisdiction of the subject matter; that because the named plaintiffs were no longer in the jail they were not proper representatives of the plaintiff class; and that the nature of the action was such that it should not be certified as a class action. The court's reasoning was:

"1.  Habeas corpus is the appropriate remedy for inquiry by the courts into the care and treatment of prisoners in county jails.

"2.  As a prerequisite to any inquiry by the courts, a plaintiff who complains of care and treatment that is of a continuing nature and absent allegations of mistreatment which might or results in imminent physical harm, injury, or death, must allege and show that existing administrative remedies have been exhausted.

"3.  The transitory nature of a county jail, as well as, the changing conditions as same relate to the care and treatment of prisoners, preclude inquiry by the Court even after the exhaustion of administrative remedies, by way of class actions, since the requirement of K.S.A. 60-223(b)(3) are not met. The questions of law and fact common to the class would and should not predominate over any questions affecting an individual member. A resolution of the issues by way of class action might well affect the interest of an individual in prosecuting a separate action. Specifically, the Court could foresee a member of the class seeking habeas corpus relief by the use of that extraordinary remedy and being thus barred or inhibited by a previous or pending resolution of the same issue raised in the class action.

"4.  Former prisoners of a county jail are no longer members of or representa-

tives of the class of prisoners presently incarcerated in a county jail and are not proper representative parties so as to seek injunctive or declaratory relief as to the care and treatment of the class of prisoners remaining."

We are unable to agree fully with the trial court's conclusions and reasoning. In particular, we feel the result reached does not adequately distinguish between complaints which are peculiar to a particular inmate, depending on that inmate's own circumstances, and those which are common to all inmates regardless of their circumstances. This lack of discrimination appears first in the petition, of course, where the scattergun approach tends to obscure the justiciable issues we perceive hidden among the pleader's verbiage.

Specifically, it would appear that the physical condition of the jail, the quality of food, the censorship of mail, and the arrangements for attorney-client conferences would have the same basic impact on all inmates of the jail, regardless of age, sex, race, term of confinement, or the conduct of the particular inmate. On the other hand, segregation policies, the need for exercise and training programs, physical abuse by other inmates, and the type and manner of imposing discipline will have varying impacts on individual inmates, depending on the same factors just noted. With these distinctions in mind we shall examine the trial court's reasons for its decision.

1. The trial court found that habeas corpus was "the" appropriate remedy for inquiry by the courts into the care and treatment of jail inmates, and the defendants argue that it is the exclusive remedy. The argument is based largely on *Levier v. State,* 209 Kan. 442, 497 P.2d 265 (1972). In that case the court held it was error to summarily dismiss a petition in habeas corpus which challenged only the conditions of confinement, and did not claim a right to be released. The exact holding on this point was:

"Habeas corpus provides *an* appropriate remedy for inquiry into mistreatment of a continuing or probably continuing nature alleged by an inmate of a penal institution." (Syl. 3. Emphasis added.)

See, also, the companion case of *Hamrick v. Hazelet,* 209 Kan. 383, 497 P.2d 273 (1972).

In neither case did the court hold that habeas corpus was the exclusive remedy, but only that the form of action was broad enough to reach the type of complaint being made there—and

here—in addition to performing its traditional function of testing the legality of the fact of confinement.

The federal courts take the same view, as may be illustrated by comparing two cases. In *Preiser v. Rodriguez,* 411 U.S. 475, 36 L.Ed.2d 439, 93 S.Ct. 1827 (1973), inmates brought federal civil rights actions under 42 U.S.C. § 1983, claiming they had been wrongfully deprived of good-time credits against their sentences. The court held that habeas corpus was their exclusive remedy. The court recognized the existence of a series of its own cases holding that a civil rights action is an appropriate vehicle to challenge the conditions of confinement, but distinguished them:

"But none of the state prisoners in those cases was challenging the fact or duration of his physical confinement itself, and none was seeking immediate or speedier release from that confinement—the heart of habeas corpus. . . . It is clear then, that in all those cases, the prisoners' claims related solely to the States' alleged unconstitutional treatment of them while in confinement. None sought, as did the respondents here, to challenge the very fact or duration of the confinement itself. Those cases, therefore, merely establish that a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody. . . ."(411 U.S. at 498-9.)

*Preiser* is to be contrasted with *Gerstein v. Pugh,* 420 U.S. 103, 43 L.Ed.2d 54, 95 S.Ct. 854 (1975). That was a class action by jail inmates seeking the right to a judicial determination of probable cause for their pretrial detention. The court noted that they "did not ask for release from state custody, even as an alternative remedy." (n. 6.) It went on to say, "Because release was neither asked nor ordered, the lawsuit did not come within the class of cases for which habeas corpus is the exclusive remedy." (*Ibid.*)

We therefore hold that where an inmate of a jail or correctional institution challenges the conditions of his confinement but does not challenge the fact or duration of that confinement, relief may be sought by way of injunction or declaratory judgment as well as by habeas corpus. Since this case falls into that category, habeas corpus was not the exclusive remedy here.

2.  The trial court found that plaintiffs had failed to exhaust their administrative remedies. In support defendants again rely on *Levier v. State,* supra. In *Levier* the inmate complained about mistreatment by prison officials. The court there emphasized that "disputed issues of fact respecting mistreatment of inmates should be determined administratively in a grievance procedure

wherein the inmate is afforded the basic elements of due process, that is, notice and an opportunity to be heard in an orderly proceeding adapted to the nature of the case." (p. 451.) However, the court also found the existing rules and regulations for resolving prisoners' grievances to be so "vague and ambiguous as to be inadequate for their intended purpose." (p. 452.) The court concluded:

"Until such time as adequate administrative provision is made for an impartial resolution of factual issues underlying such complaints there is no alternative to judicial inquiry respecting the facts rather than limiting judicial review of administrative actions to its ordinary scope. When appropriate administrative procedures have been established then those remedies will be required to have been exhausted prior to resort to the courts." (*Ibid.*)

*Levier* thus recognized the long-standing rule that where administrative remedies are available they must be exhausted before resort may be had to the courts. But it also recognized that where such remedies are not available, or are inadequate to address the problem in issue, exhaustion is not required. *Cf.*, 2 Am. Jur. 2d, *Administrative Law,* § 606; *McNeese v. Board of Education,* 373 U.S. 668, 10 L.Ed.2d 622, 83 S.Ct. 1433 (1963). Further, "[i]n order for the exhaustion doctrine to apply there must be a remedy provided through administrative action, and there can be no remedy in this connection where the action of the agency amounts to no more than a recommendation." 2 Am. Jur. 2d, *Administrative Law,* § 606, relying on *United States Alkali Export Asso. v. United States,* 325 U.S. 196, 89 L.Ed. 1554, 65 S.Ct. 1120 (1945). And *cf., Rosenfield v. Malcolm,* 65 Cal. 2d 559, 566, 55 Cal. Rptr. 505, 421 P.2d 697 (1967), holding that "the mere possession by some official body of a continuing supervisory or investigatory power does not itself suffice to afford an 'administrative remedy' unless the statute or regulation under which that power is exercised establishes clearly defined machinery for submission, evaluation, and resolution of complaints by aggrieved parties."

With those concepts in mind we look at the administrative remedies available to plaintiffs and their class. Defendants rely first on Sections VIII and IX of the Shawnee County Jail Policy and Guidelines. Section VIII simply permits an inmate with a request or grievance to put it in writing on a form to be supplied by the jail staff. It also requires the addressee to make a prompt reply to the inmate in writing, and that both documents be

perpetuated in the inmate's file. No provision is made for further action if the reply is unsatisfactory to the inmate. This section, which does no more than permit an inmate to register a complaint, can hardly be deemed an "administrative remedy." Section IX does provide for an administrative hearing, but it applies only when rights under the Guidelines are taken away or the inmate has been subjected to certain disciplinary action. Examination of the hearing procedures reveals that they are tailored exclusively to discipline cases. They may or may not be adequate for that purpose, but they clearly do not contemplate or purport to deal with the types of complaints made by plaintiffs in this suit.

The second administrative remedy relied on by defendants stems from the authority of the state secretary of corrections under K.S.A. 75-5228. Under that section the secretary is responsible for promulgating sanitation and safety standards for all jails and for inspecting jails for compliance. In the case of noncompliance he is to make recommendations for improvement. These recommendations are submitted to a local committee for a determination of reasonableness. Then, if the committee finds they are reasonable, a public hearing is to be held, after which the committee is to file its findings. Only then is there a duty on the part of the county commissioners to make the recommended improvements.

As an administrative remedy for these plaintiffs this procedure has two deficiencies. First, it makes no provision for specific complaints of jail inmates or for a hearing on such complaints if made, nor does it provide for any binding determinations. The secretary's supervisory power is exercised on an ex parte basis, and his conclusions are advisory only. Ultimate authority rests with the local committee. Second, and more important, the procedure deals only with sanitation and safety. It does not purport to reach plaintiffs' broad spectrum of complaints in areas which bear on sanitation and safety only incidentally if at all.

We therefore conclude that plaintiffs had no available, effective administrative remedy which they were required to exhaust before bringing this action.

3. The trial court held that the transitory nature of a jail population precludes the use of a class action because "the requirement of K.S.A. 60-223(b)(3) are not met." In so holding the court was concerned that an adjudication in this suit might bar or

inhibit a jail inmate in an individual suit brought to remedy individual grievances. While we agree that such a result should be avoided, as indicated in our earlier discussion it appears to us that many if not most of the issues raised are common to all inmates of the jail. Those issues which are common can be decided in a class action without affecting individual rights which depend on the circumstances of an individual inmate. Cases in which the class action vehicle has been used to adjudicate such claims are legion. *E.g., Jones v. Wittenberg,* 323 F. Supp. 93 (N.D. Ohio 1971), aff'd 456 F.2d 854 (6th Cir. 1972); *Inmates of San Diego County Jail, Etc. v. Duffy,* 528 F.2d 954 (9th Cir. 1975); *Jones v. Diamond,* 519 F.2d 1090 (5th Cir. 1975). In the last case cited the court observed:

"No one having even a slight knowledge of jails can be anything but shocked, alarmed, and dismayed at the conditions presently prevailing in many of them. Realistically, class actions are the only practicable judicial mechanism for the cleansing reformation and purification of these penal institutions. . . ."(p. 1097.)

While we would emphasize that plaintiffs' allegations about the Shawnee county jail in this case are still only allegations, untested by any sort of evidentiary hearing, we agree with the Fifth Circuit that a class action is an appropriate method by which such allegations may be tested.

4. Finally, the trial court found that the named plaintiffs could not represent the class because, after suit was filed, they had been transferred to other institutions and thus had ceased to be members of the class. As to them the case was moot, and the court concluded that they no longer had a sufficient stake in the litigation to continue as class representatives. We cannot agree.

The federal courts, construing Federal Rule of Civil Procedure No. 23, after which our K.S.A. 60-223 was patterned, have developed an exception to the mootness rule which covers cases like this one. And, "[t]raditionally, we have followed interpretation of federal procedural rules after which our own have been patterned." *Stock v. Nordhus,* 216 Kan. 779, 782, 533 P.2d 1324 (1975).

The definitive case is *Sosna v. Iowa,* 419 U.S. 393, 42 L.Ed.2d 532, 95 S.Ct. 553 (1975). That was a class action challenging Iowa's one-year residence requirement for divorce plaintiffs. The named plaintiff met the one-year requirement long before the

final determination of the case, so that as to her the case became moot. The court nevertheless held that she was entitled to carry on the action on behalf of the class, as to whose members the case was not moot, because the issue raised was one "capable of repetition, yet evading review." (419 U.S. at 399-400.)

That doctrine was applied in a prisoners' rights case in *Gerstein v. Pugh,* supra, where the class consisted of persons detained in jail before trial. The named plaintiffs were convicted before the case reached the Supreme Court. The Court held:

"This case belongs, however, to that narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class. See Sosna v. Iowa, 419 U.S. 393, 42 L.Ed.2d 532, 95 S.Ct. 553 (1975). Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures. The claim, in short, is one that is distinctly 'capable of repetition, yet evading review.'

". . . The length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial. It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain. The attorney representing the named respondents is a public defender, and we can safely assume that he has other clients with a continuing live interest in the case." (420 U.S. 103, 110, n. 11.)

The same result has been reached by the lower federal courts both before and after *Sosna* and *Gerstein. E.g., Rivera v. Freeman,* 469 F.2d 1159, 1162-3 (9th Cir. 1972); *Jones v. Diamond,* supra; *Inmates of San Diego County Jail, Etc., v. Duffy,* supra.

In this case the named plaintiffs are no longer members of the class. There are, however, other class members who are inevitably subject to the conditions complained of in the petition. Present counsel has undertaken to represent the class, and there is no suggestion that there would be any lack of interest or that the proceedings would not be truly adversary in character. We conclude that the class was properly certified in the first instance, and that mootness as to the named plaintiffs was not a sufficient ground for dismissing the action.

We emphasize once again that we entertain no views on the merits of plaintiffs' claims. Upon trial it may turn out that there has been no deprivation of any constitutional or statutory right.

We do hold, however, that as to those claims common to all inmates of the jail plaintiffs are entitled to present their evidence in a class action.

The judgment is reversed and the case is remanded for further proceedings in harmony with this opinion.