No. 49,976

VERNON L. STEELE, For Himself and For All Others Similarly Situated, *Appellant,* v. SECURITY BENEFIT LIFE INSURANCE COMPANY, *Appellee.*

(602 P.2d 1305)

Opinion filed December 1, 1979.

*Fred W. Phelps, Jr.,* of Fred W. Phelps-Chartered, of Topeka, argued the cause and was on the brief for the appellant.

*Wesley A. Weathers,* of Crane, Martin, Claussen, Hamilton & Barry, of Topeka, argued the cause, and *Randall J. Forbes,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: Plaintiff-appellant Vernon L. Steele contends the district court erred in denying his motion for class action certification and in dismissing the case in its entirety. We do not agree.

In 1958, Steele purchased a $3,000 endowment insurance policy from defendant Security Benefit Life Insurance Company (hereinafter SBL). A like policy in the amount of $1,000 was purchased by Steele from SBL in 1966.

Each policy provided that upon default the policy owner had 60 days (90 days by company practice) to select one of three nonforfeiture provisions:

(A) Policy could be surrendered for net cash value.

(B) Policy could be continued as nonparticipating, paid-up, reduced ordinary life.

(C) Policy could be continued for a certain length of time as nonparticipating, paid-up term insurance in an amount equal to the face value of the policy.

If the policyholder did not elect one of these options, the automatic option was (C).

Until 1972, premiums on this type of policy were collected by SBL by sales agents visiting the homes of policyholders. The sales agents carried with them loan forms which enabled policyholders to borrow against their policies to pay the premiums. This, for all practical purposes, was a fourth "option" not specified in the policy. If this fourth option were elected, the policy as written remained in full force. Under the three options specified in the policy the insurance was either surrendered or converted to a different type of insurance with concomitant reduction in benefits. In 1972, SBL determined the whole procedure of personal collection of premiums was no longer economically feasible and issued passbooks to holders of such policies.

In 1973, the premium paying procedure was again changed and passbooks were eliminated. Under the procedure from 1973 to date a periodic premium notice is sent and the policyholder then remits payment. Collection of premiums is no longer accomplished by personal contact and the fourth "option," a loan against the policy to pay the premium, is no longer readily available. To compensate for this loss SBL instituted a new procedure whereby, upon a default where a policyholder did not specify one of the three policy options, an automatic premium loan (APL) was made, thereby keeping the policy as written in full force and effect. Upon making an APL the policyholder was sent a notice of the action. It was and is the policy of SBL to reverse the APL process upon request of the affected policyholder and institute whichever one of the three listed options the policyholder designates.

In 1974, Steele defaulted on a premium on each policy, the APL procedure was followed, and Steele was notified of the action. Steele did not express dissatisfaction with the procedure or request a listed policy option. On May 5, 1975, Steele's attorney contacted SBL and asked for information as to how the premium payments had been handled. SBL explained the procedure and, in accordance with its operating procedure, SBL offered to reverse the APL process and institute whichever listed policy option Steele desired. Steele's attorney stated he would discuss the matter with his client. Four days later (May 9, 1975) Steele instituted this class action, seeking $2,000,000 actual

damages and $10,000,000 punitive damages against SBL on the ground the APL procedure was wrongful.

In August, 1975, and November, 1975, while this action was pending, the premiums on both policies again became due and were not paid. Counsel for SBL sent Steele's counsel a notice of default and a request for instruction. The August 21, 1975, letter is reproduced herein:

"My client's records indicate that the premium due August 1, 1975, on Mr. Steele's policy number 3501107 has not been paid as of August 20 and is, therefore, nearing the end of the thirty-day grace period. Since this is one of the policies in suit and since your client so strongly objects to SBL's past handling of such situations, I have been asked to correspond with you concerning same.

"If your client does not intend to pay the premium, please contact me prior to the end of August to discuss this matter. Should the grace period lapse without our having heard from you, the policy will revert to extended term insurance, subject to Mr. Steele's right to elect some other option within sixty days of the premium due date.

"I assume it goes without saying that any correspondence, oral or written, concerning this policy or any other matter related to the suit will be directed to me as attorney for SBL."

No response was received to the letter and the policies reverted to option (C) of the policies—extended term insurance—as of August, 1974, the date of the first APL.

In April, 1976, Steele filed a motion for certification of the case as a class action pursuant to K.S.A. 60-223. Apparently, this motion was never heard. Steele's attorney proceeded with discovery. In response to a letter from the court to counsel, inquiring as to the status of the case, Steele's counsel filed an amended motion to certify the action as a K.S.A. 60-223(b)(2) class action, which stated, *inter alia:*

"Thus, the defendant corporation, having been caught in violation of its contract, and after the lawsuit for such violation had been filed, clumsily attempts to manipulate its records and its computer so as to avoid the impact of the lawsuit by rectifying its flagrant contract violation. But this is so for the lead plaintiff only, and the class yet waits for such rectification. It is precisely this rectification that a B-2 class action has been designed to effectuate at the hands of Kansas courts by the enactment of K.S.A. 60-223."

Stripping away Steele's diatribe against SBL, we see even plaintiff admitting his alleged individual problem with SBL has been rectified, but the class awaits "rectification."

The district court held:

"On April 23, 1976 plaintiff filed his first motion for the determination and

certification of a class action pursuant to K.S.A. 60-223. In this motion no reference is made to injunctive relief but emphasis is placed rather upon the claims for monetary damages. Defendant filed an extensive brief in opposition to the class certification on August 4, 1976 and the Court continued the matter for further discovery prior to ruling on the motion. In its brief in opposition to the original motion for class certification defendant raised a number of pertinent issues, the principal one of which goes to the 'commonality' requirement of the class action statute. In this connection, defendant pointed out to the Court that each debit policy holder upon defaulting in the payment of premiums was furnished with the notice mentioned above. Some elected certain of the contract options and others elected to do nothing. Many policy holders live outside the state of Kansas. Obviously, a number of pertinent legal questions differentiating plaintiff from other members of his putative class appear from even a cursory analysis of the circumstances. First, has plaintiff or other members of his alleged class acquiesced in the suggested modification of the contract between the parties. Second, has plaintiff or other members of his alleged class waived any defenses by their inaction following the receipt of the notice. Third, did members of the alleged class actually receive notice in each case. Fourth, where the value of the policy is shown to be greater under the company's gratuitous action can plaintiff or other members of his alleged class show damage and if so would this question not be different for each policy holder. Fifth, varying terms of applicable statutes of limitation would have to be determined in each separate instance. Sixth, what conflict of laws, rules would differentiate members of the class where the notice was received by out of state policy holders and acted on there. Other questions may also be present, but these occur immediately to the Court. Frankly, the Court is persuaded that this action cannot proceed as a class action because the commonality element is not present. Each policy holder's claim will have to be litigated separately to determine whether the various defenses of the company are applicable, whether the plaintiff in each action has actually suffered damage and the amount of it, and the extent to which the other questions mentioned apply, if at all. Consequently, on this point alone, the Court is fully satisfied that the motion to certify the class should be overruled.

"Subsequent to the original motion to certify the class plaintiff has completed certain discovery and has now filed, on November 18, 1977, a second motion to certify a 'B-2' class. In this motion, plaintiff has apparently abandoned his claim for monetary relief altogether and has now requested only injunctive relief requiring the defendant to reverse its bookkeeping entries on debit policies to effect the selection of options mentioned above in all situations where the policy holder did not within sixty days following the default in the payment of premium elect a different option set out under the contract. To this new motion defendant has again filed an extensive reply the thrust of which is to demonstrate rather dramatically that plaintiff's claim for relief in this matter is now entirely moot for the reason that all transactions on policies owned by plaintiff have been reversed pursuant to his request, thus to effect the selection of option three which plaintiff contends is required under the contract. In this connection, the Court is satisfied that the factual allegations in defendant's memorandum of points and authorities in response to plaintiff's motion to certify a B-2 class are true and correct and that the authorities there cited are entirely on point and persuasive. Rather than

burdening this record with a reiteration of those materials, the Court simply adopts by reference as the opinion of the Court that memorandum of the defendant as further reasons for overruling this motion to certify this class. Furthermore, the Court is constrained to note that certifying this action as a class action could have a devastating effect upon policy holders in situations roughly similar to that of the plaintiff. Where it has been conclusively demonstrated to the Court that the option provided by the company provides to the policy holder a contract of insurance of substantially greater value than that which would exist under option three, the certification of this action as a class action might well result in diminishing the insurance assets of plaintiff's alleged class in situations where they had relied on the company's notice to advance the policy loan.

"Finally, although no motion has been presented on this point the Court is fully satisfied that this plaintiff's claim is wholly moot, as set out in its findings above, and is therefore persuaded that this action should be dismissed in its entirety even as to plaintiff's individual claim. Again, in this connection, the Court reiterates its findings and conclusions now adopted by reference in defendant's memorandum on the question of mootness. There being no triable issue remaining before the Court, therefore, this action is dismissed in its entirety and the costs are hereby taxed to the plaintiff."

Steele contends the district court erred in denying class certification and in dismissing the case in its entirety.

K.S.A. 60-223 provides:

"(a)  Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b)  Class actions maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"(1)  The prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

"(2)  the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

"(3)  the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) The interest of members of the class in prosecuting or defending separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against members of the class; (C) the appropriate place for maintain-

ing, and the procedural measures which may be needed in conducting, a class action.

"(c)  *Determination by order whether class action to be maintained; judgment; actions conducted partially as class actions.*

"(1)  As soon as practicable after the commencement and before the decision on the merits of an action brought as a class action, the court shall determine by order whether it is to be maintained as such. Where necessary for the protection of a party or of absent persons, the court, upon motion or on its own initiative at any time before the decision on the merits of an action brought as a nonclass action, may order that it be maintained as a class action. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

The Kansas class action statute is patterned after Fed. R. Civ. P. 23 and we have traditionally followed the interpretation of federal procedural rules after which our own have been patterned. *Beaver v. Chaffee,* 2 Kan. App. 2d 364, 371, 579 P.2d 1217 (1978).

Prior to the motion for class certification, Steele's alleged problem with SBL had been rectified. By the time for the hearing he admittedly had been placed in the same situation as if APL had never existed. By his amended motion to certify he was seeking the same relief for the class that he had already received.

It is clear that a noncertified class cannot succeed to the adversary position formerly occupied by the no longer aggrieved representative plaintiff whose own claim has become moot. *Vun Cannon v. Breed,* 565 F.2d 1096, 1098 (9th Cir. 1977), and cases cited therein. In *Allen v. Likins,* 517 F.2d 532, 535 (8th Cir. 1975), it is stated:

"We recognize that a class action may continue to be a 'case' or 'controversy' under Art. III and the Declaratory Judgment Act if the claim of the named plaintiff becomes moot after class action certification. *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Here, of course, the named plaintiff's claim became moot before the district court had certified the case as a class action pursuant to Fed. R. Civ. P. 23 (c). Thus, the dismissal of the entire action must be affirmed unless the district court failed to rule on plaintiff's motion for class action certification 'as soon as practicable after commencement of the action' as is required by Rule 23 (c)."

Most cases allowing a class action to continue after the named plaintiff is no longer aggrieved involve factual situations wherein the mooting of the named plaintiff's claim occurred after class certification. For example, see *Beaver v. Chaffee,* 2 Kan. App. 2d 364. There is no claim that the district court delayed certification. In fact, it was the court that prodded Steele's attorney into moving the case toward hearing of the certification issue. Further,

this case does not involve a situation wherein a defendant is attempting to avoid class-wide responsibility for its wrongful acts through deviously cutting the ground out from under the named plaintiff by correcting the wrong done to the named plaintiff (notwithstanding Steele's aforementioned allegations to the contrary).

Steele was the sole named plaintiff. Prior to the hearing on his motion to certify the class as a K.S.A. 60-223(b)(2) class action, he, individually, had already obtained the relief he was seeking for the class. His claim was moot and he was no longer a member of the class whom he was purporting to represent.

Under the circumstances herein we must conclude that the district court did not err (1) in concluding Steele's claim against SBL was moot; (2) in denying class certification; or (3) in dismissing the action in its entirety.

Properly used, class actions serve a legitimate need. The average person may, through class action, band together with others in the same position to seek redress for genuine wrongs from corporate giants and others in superior financial position. Absent the class action tool, all too often the cost of individual suits for redress would be prohibitive. Because class action statutes are intended to make the tool available for many types of wrongs, the language of such statutes is broad. This very broadness has led to abuses in class action litigation and these abuses are the cause of the growing national controversy over class actions.

A notable observation on these abuses is contained in O'Kelley, *Class Actions: Proposals for New Rules of Professional Responsibility,* 5 Litigation 25 (Winter 1979), as follows:

"Too often, boilerplate class allegations are used indiscriminately by lawyers for the purpose of intimidating defendants into settling with the named plaintiffs in the early stages of the litigation. Lawyers know that many defendants will prefer to settle a class suit in order to avoid the possibility of class-wide liability, regardless of the sometimes questionable merits of the underlying cause of action. By obtaining a 'strike suit' or 'nuisance value' settlement, the unethical attorney is able to reap tremendous profit with little or no effort or ability. Even where class allegations are not just a calculated means of extracting an undeserved settlement, but are legitimately asserted, the named plaintiffs and their counsel are often tempted into sacrificing the interests of the previously asserted class for private gain, by agreeing to dismiss 'their' action voluntarily for a cash settlement, for which counsel seeks a substantial fee."

See also, Manual for Complex Litigation, § 1.41, p. 46 (1978).

In order to assist in reducing abuses in class action litigation it is essential that trial judges be afforded substantial discretion in the decision-making process as to the maintenance of a class action. See *Connolly v. Frobenius,* 2 Kan. App. 2d 18, Syl. ¶ 3, 574 P.2d 971, *rev. denied* 225 Kan. 843 (1978).

The judgment is affirmed.

FROMME, J., not participating.