(641 P.2d 406)

No. 52,554

In The Matter of The Application of ALBERT F. UPHOFF For A Writ of Habeas Corpus.

Opinion filed February 18, 1982.

*James E. Flory,* special assistant attorney general, and *Robert T. Stephan,* attorney general, for appellant Kansas Department of Corrections.

*Kiehl Rathbun,* of Shawver & Rathbun, of Wichita, for appellee Albert F. Uphoff.

Before JUSTICE MILLER, presiding, REES, J., and STEVEN P. FLOOD, District Judge, assigned.

FLOOD, J.: This is a case of first impression for the State of Kansas. It concerns the due process standards to be applied to prerelease rescission of a parole grant. It does not concern due process standards for parole revocation. See K.A.R. 1981 Supp. 45-9-1.

On April 24, 1978, Albert F. Uphoff, appellee, was convicted of aggravated incest and sentenced to serve not less than three nor more than ten years in the custody of the Secretary of Corrections. On January 10, 1980, the appellee was certified as parole eligible by the Secretary of Corrections and recommended for a hearing before the Kansas Adult Authority (the Authority). Following a hearing on February 18, 1980, the appellee was informed in writing that the Authority had decided to "parole to placement on or after March 3, 1980, when arrangements completed." On March 10, 1980, the Authority received a letter from the appellee's ex-wife, enclosing a letter the appellee had allegedly written to the victim of the crime for which he was incarcerated. The appellee's letter was apparently written before the February 18

hearing but its existence was unknown to the Authority at that time. As a result of the receipt of the letters, the Authority scheduled the appellee for a special hearing before Dr. Alfredo R. Calvillo, a member of the Authority, on March 18, 1980. On March 12 or 13, 1980, the appellee was shown the following written notice:

> "Memorandum
> Kansas Adult Authority
>
> Date   March 11, 1980
>
> TO: Wichita Work Release Center
> FROM: Kansas Adult Authority
> SUBJECT:   UPHOFF, Albert
>            WWRC 31715
>            Please schedule the above named inmate for a special hearing on the
>            March 17, 1980 docket.
>
> /s/ Keith E. Magers
> Keith E. Magers
> Assistant Director"

He was not advised of the subject matter of the hearing nor was he given other explanation or information. He was not represented by counsel at the hearing. He did have the opportunity at the hearing to discuss the letters. On March 25, 1980, after a further review by the Authority members Calvillo, Mills and Walker, the Authority rescinded its earlier decision and recommended the appellee be passed to December, 1980, for further parole consideration.

The appellee, who was in custody at the Wichita Work Release Center, then filed an application for habeas corpus in the Sedgwick County District Court challenging the legality of his confinement. Upon hearing on the appellee's application, the trial court found the appellee had in fact been granted a parole subject only to mechanical issuance of a parole certificate. In such instance, the trial court held, the appellee was entitled to the full due process procedures mandated by *Morrissey v. Brewer,* 408 U.S. 471, 33 L.Ed.2d 484, 92 S.Ct. 2593 (1972), before the parole grant could be rescinded. Further, the trial court found the letter written by the appellee did not constitute "substantial information that was not available at the hearing which would indicate that the inmate cannot reasonably lead a law abiding life" (see K.A.R. 1981 Supp. 45-7-3 [e]), and the action of the Authority in rescinding the parole grant as a result of that letter was arbitrary, capricious and an abuse of discretion. The trial court ordered the

appellee released on parole. The Secretary of Corrections appealed. The trial court subsequently ordered the appellee released on bond pending resolution of this appeal.

In *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 60 L.Ed.2d 668, 99 S.Ct. 2100 (1979), the Supreme Court held the Fourteenth Amendment due process clause does not apply to discretionary parole release determinations unless state law makes parole release more than a possibility. 442 U.S. at 7-8. Similarly, the Supreme Court has recently held that prerelease rescission of a state parole grant requires no due process hearing where state law creates no protected "liberty interest." *Jago v. Van Curen,* 454 U.S. 14, 70 L.Ed.2d 13, 19, 102 S. Ct. 31 (1981).

In contrast, *Morrissey v. Brewer,* 408 U.S. 471, dealt with the revocation of a state parole after the parolee had been conditionally released in society. *Morrissey* held termination of the parolee's "indeterminate liberty" inflicts a "grievous loss" and this liberty interest is within the protection of the Fourteenth Amendment. 408 U.S. at 482. Therefore, according to *Morrissey,* revocation of a released parolee's parole requires two hearings, one preliminary and the other final. The preliminary hearing (a) must be before an independent officer to determine whether there is probable cause or reasonable ground to believe a parole violation has been committed; (b) the parolee must have written notice of the hearing and its purpose; (c) the notice must state what parole violations have been alleged; (d) the parolee must have the opportunity at the hearing to present evidence or documents; and (e) the hearing officer should make a determination of probable cause with the reasons therefor and the evidence relied upon summarized. Within a reasonable time after the parolee is taken into custody, the parole authority, prior to its decision, must afford the parolee a hearing, the final hearing, to determine the relevant facts regarding a basis for revocation and whether revocation is warranted. 408 U.S. at 488. Due process at such latter hearing includes a minimum:

"(a) [W]ritten notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers

or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." 408 U.S. at 489.

*Jago v. Van Curen,* 454 U.S. 14, 70 L.Ed.2d 13, recently decided, concerned an Ohio prisoner. It holds parole rescission requires no due process hearing where state law creates no protected "liberty interest." In *State, ex rel., v. Auth.,* 45 Ohio St. 2d 298, 299, 345 N.E.2d 75 (1976), the Ohio Supreme Court found "[t]he Adult Parole Authority has no regulation requiring a hearing prior to rescinding the grant of a parole before release."

When the Authority decided to rescind the appellee's parole grant on March 25, 1980, its adopted regulations included the following:

"(e) *Deferred release.* Any inmate who has been granted parole and who commits an institutional infraction shall not be released as scheduled but shall remain in the institution until the authority has acted upon a report to be submitted promptly by the institution concerning the violation and results of the disciplinary proceedings. The report from the institution may include a recommendation to the authority. If the authority is considering rescission of parole or further deferment of the established release date, it shall promptly hold a special hearing with the inmate to allow the inmate an opportunity to comment on the status of the case or incident of the misconduct and make statements in mitigation of such proposed rescission or deferment.

"Inmates who have been granted parole may have their release deferred or have the parole rescinded on the basis of (1) institutional infractions in which the inmate was found guilty; (2) failure to comply with a specific condition of the parole contract; (3) an inadequate parole plan that does not provide for sufficient supervision; or (4) substantial information that was not available at the hearing which would indicate the inmate cannot reasonably lead a law abiding life." (K.A.R. 1981 Supp. 45-7-3 [e].)

In *Drayton v. McCall,* 584 F.2d 1208 (2nd Cir. 1978), the Court of Appeals dealt with federal parole rescission. Because the United States Parole Commission's regulations limited the Commission's positive authority to rescind a parole grant to carefully defined situations, the Court felt there was an expectation of future liberty based upon a governmentally established entitlement which could not be withdrawn without due process of law. Due process, it was held, did not require the full protection provided by *Morrissey.* The federal regulations in question were not substantially different from K.A.R. 1981 Supp. 45-7-3 (e).

*Drayton* relied heavily on *Wolff v. McDonnell,* 418 U.S. 539, 41 L.Ed.2d 935, 94 S.Ct. 2963 (1974), where it was held that loss of good time credit in a prison disciplinary action did not require

the *Morrissey* standards of due process protection, but did require written notice of the charges with at least twelve-hour notice, an impartial hearing, a written statement by the factfinders of the reasons for their decision and the evidence relied on, and the opportunity to call witnesses and present documentary evidence. *Wolff* did not require the right to confront and cross-examine witnesses or the right to counsel in all cases. *Drayton* goes further than *Wolff* in requiring the right to counsel at a rescission hearing.

The 10th Circuit considered federal parole rescission in *Robinson v. Benson,* 570 F.2d 920 (10th Cir. 1978), and held the *Wolff* standards were sufficient and no right to cross-examination or counsel was constitutionally required.

We conclude that because Kansas parole grant rescission is limited to situations carefully defined in K.A.R. 1981 Supp. 45-7-3 (e), there exists a liberty interest requiring certain minimum due process safeguards. We should emphasize, however, as the United States Supreme Court did in *Morrissey v. Brewer,* 408 U.S. at 481:

"[T]hat due process is flexible and calls for such procedural protections as the particular situation demands. . . . Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure."

We hold that where, after a future parole date has been fixed, and, prior to releasing the inmate, the Authority considers rescission of parole or deferment of the release date, the Authority should give to the inmate:

(1) Written notice, at least twenty-four hours before the hearing, of the purpose of the hearing and the nature of the charges to be heard;

(2) A special hearing before the Authority or one or more of its members;

(3) An opportunity to appear, to hear or read the evidence against him, to confront and cross-examine any witnesses against him (unless the hearing officer finds this should not be allowed because of threat to institutional safety or for other good cause), to testify, and to present witnesses or documentary evidence in his behalf; and

(4) A written statement of the board's order, including the reasons therefor.

Counsel need not be furnished, but staff assistance should be provided if requested.

In this case, the action of the Authority met some, but not all, of these suggested standards. Uphoff was given notice of the hearing, but not of the purpose or the charges. In the special hearing before a board member, he was made aware of the purpose of the hearing and of the only evidence against him, a letter he admitted writing. Presumably, he was permitted to make a statement or give an explanation, and to testify in his own behalf. No witnesses testified against him, and he makes no suggestion, even at this late date, of evidence he might have had, or witnesses he might have called, in his behalf. The action of the board was based entirely upon the letter; its content and authorship is unchallenged. The Authority could not anticipate the standards which we now adopt. Its failure to give written notice of the purpose of the hearing and the nature of the charges, in order that Uphoff might have a reasonable opportunity to prepare for the hearing, is the principal error. However, since Uphoff now suggests no evidence in mitigation which might have been presented, we conclude that the Authority's error was harmless. The trial court's finding that appellant's right to due process of law was violated is correct, although the trial court applied too stringent a standard.

In Kansas, the authority to release on parole is vested in the sound discretion of the Kansas Adult Authority. K.S.A. 1980 Supp. 22-3717(1). Its orders are not subject to review except for violation of law. K.S.A. 22-3710. The district court has no authority to substitute its discretion for that of the board in granting parole. If there is a serious due process violation, or if the board abuses its discretion, the district court can only remand the case to the Kansas Adult Authority with instructions to grant the proper hearing and make the proper findings. See *Billiteri v. United States Bd. of Parole,* 541 F.2d 938 (2nd Cir. 1976).

The judgment is reversed.