No. 86,079

In the Matter of the Petition of Michael J. Pierpoint
for a Writ of Habeas Corpus.
(24 P.3d 128)

Opinion filed June 1, 2001.

*Robert E. Wasinger*, legal counsel, Department of Corrections, argued the cause and was on the brief for appellant.

*Daniel C. Walter*, of Ryan, Walter & McClymont, Chtd., of Norton, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: The Norton Correctional Facility (NCF) appeals a district court order enjoining NCF from proceeding with a disciplinary hearing against an inmate unless the inmate's retained attorney is allowed to participate in the hearing. NCF claims (1) the inmate was required to exhaust administrative remedies prior to filing a K.S.A. 2000 Supp. 60-1501 habeas corpus petition; (2) under these circumstances, an inmate has no constitutional right to representation by retained legal counsel in a class II disciplinary proceeding; and (3) administrative regulations do not entitle petitioner to the presence of retained legal counsel in this inmate disciplinary hearing.

Michael Pierpoint is an inmate at NCF. On December 16, 1999, NCF charged Pierpoint in Case No. 99-2220 with violating K.A.R. 44-12-205, Unauthorized Dealing and Trading, a class II offense, *i.e.*, Pierpoint purchased from other inmates without permission handicraft items: paper rocking chairs. Pierpoint retained counsel to represent him at the disciplinary hearing, then requested NCF to allow the presence and assistance of his retained counsel at the hearing. In addition, Pierpoint's counsel wrote a letter to Jay Shelton, NCF Warden, requesting to appear on behalf of Pierpoint. Both requests were denied by the warden. The administrative hearing was set for January 5, 2000.

Prior to the hearing, Pierpoint filed a K.S.A. 2000 Supp. 60-1501 habeas corpus petition in the Norton County District Court requesting that NCF be restrained from conducting further proceedings in Case No. 99-2220 unless his retained attorney could be present at the disciplinary hearing. The same day, the district court issued a temporary order restraining NCF from taking action against Pierpoint in the pending disciplinary proceeding unless his retained counsel appeared in all phases of the proceedings and assisted him in the preparation of his defense. After a hearing, the district court issued a permanent restraining order directing NCF to allow Pierpoint access to retained counsel at reasonable times in advance of any further proceeding in NCF Disciplinary Case No. 99-2220. The order stated that Pierpoint's retained counsel was to actively participate in presenting Pierpoint's defense, including, but not limited to, argument, examination, and cross-examination. NCF's motion for reconsideration was denied by the district court.

NCF appealed to the Kansas Court of Appeals. The case was expedited and transferred to this court pursuant to K.S.A. 60-1505(e)(2) and K.S.A. 20-3018(c). Our jurisdiction is pursuant to K.S.A. 60-2101.

### Exhaustion of an Administrative Remedy

The Secretary of Corrections and NCF note that Pierpoint failed to file a formal grievance form required by K.A.R. 44-15-101 and K.A.R. 44-15-102. They contend Pierpoint was not entitled to an injunction in the district court because he failed to exhaust administrative remedies. The Secretary and NFC point out that before conditions of confinement may be reviewed in a habeas corpus proceeding, available administrative remedies must be exhausted. *Davis v. State*, 211 Kan. 257, 505 P.2d 293 (1973); *Case v. Crouse*, 210 Kan. 341, 502 P.2d 785 (1972). They assert that the failure to exhaust administrative remedies also bars claims for declaratory and injunctive relief. *Jarvis v. Kansas Commission on Civil Rights*, 215 Kan. 902, 905-906, 528 P.2d 1232 (1974).

An allegation that a party is required to or has failed to exhaust administrative remedies presents a question of law, and the ap-

pellate court's standard of review is unlimited. *NEA-Coffeyville v. U.S.D. No. 445*, 268 Kan. 384, Syl. ¶ 3, 996 P.2d 821 (2000).

Pierpoint asserts that a party is not required to seek or exhaust administrative remedies, even if such remedies are considered the party's exclusive remedy, if the remedies are inadequate. See *State ex rel. Pringle v. Heritage Baptist Temple, Inc.*, 236 Kan. 544, 549, 693 P.2d 1163 (1985) ("[I]t is important to note that we have held a party need not seek administrative remedies when these remedies are known to be inadequate."); *Cussimanio v. Kansas City Southern Ry. Co.*, 5 Kan. App. 2d 379, 385-86, 617 P.2d 107 (1980) ("Exhaustion of administrative remedies is not required when administrative remedies are inadequate."); see also *Zarda v. State*, 250 Kan. 364, 369, 826 P.2d 1365, *cert. denied* 504 U.S. 973 (1992) (Plaintiffs should be permitted to seek court relief without first presenting the case to an administrative agency if no purpose would be served by requiring plaintiffs to exhaust administrative procedures.). Pierpoint notes that his request for retained counsel to be allowed to represent him at the disciplinary hearing was denied twice.

Pierpoint contends that his personal experience with NCF's administrative process demonstrates that, as applied to him, the NCF administrative remedies are inadequate because by the time he will receive relief from administrative remedies, he will have received discipline for the charge. Pierpoint refers to a prior disciplinary case filed by NCF against him, Case No. 99-1830, where his request to be represented by retained counsel was denied. Pierpoint's habeas petition states:

"In October of 1999, the Petitioner was charged with a disciplinary violation at the Norton Correctional Facility in Case Number 99-1830. In those proceedings the Petitioner was initially convicted; however, in the process, he was denied his right to have retained counsel of his choice present with him at the disciplinary hearing. The Petitioner was denied his constitutional right to confront and cross-examine the complaining witness. The Petitioner was denied the right to produce witnesses in support of his defense and, at the initial hearing, the evidence against the petitioner was insufficient as a matter of law. The conviction occurred on October 27, 1999. On October 28, 1999, the Petitioner filed a Petition for Writ of Habeas Corpus in the District Court of Norton County, Kansas and obtained a temporary restraining order preventing NCF from enforcing punishment for

the conviction. At the same time, the Petitioner pursued his administrative remedies through the Secretary of Corrections. Ultimately, the Petitioner's conviction of the original disciplinary charge was remanded by the Secretary of Corrections with instructions that the Norton Correctional Facility provide Petitioner with a new trial. It was directed that the complaining witness be produced at the new hearing. Again, the Petitioner's request to have his retained counsel of choice present with him at the second disciplinary hearing was denied . . . even though, in the Habeas Corpus action in the District Court of Norton County, Kansas, District Judge Charges E. Worden had indicated his concerns about the fact that the Petitioner's earlier request for counsel had been denied."

Case No. 99-1830 was remanded to the disciplinary committee, and Pierpoint was later found not guilty of the violation charged.

Before the district court in this case, Pierpoint's retained attorney argued:

"[D]espite the fact that [Pierpoint] was ultimately found not guilty of his last disciplinary charge, Your Honor, he still received the punishment for it because while he was exhausting his administrative remedies, [NCF] ran him through all the punishment. The only thing they weren't able to do was take the good time credits from him. They did everything else."

The district court asked Pierpoint's attorney to state what punishments had been imposed in the prior disciplinary case even though Pierpont was ultimately found not guilty. Pierpoint's attorney responded that Pierpoint lost privileges for 15 days, and he was moved from one of the most desirable housing units into less favorable housing—a floor reserved for sex offenders. Pierpoint's attorney outlined several other NCF actions he construed as retaliatory actions.

Without setting out its reasons, the district court found that under the circumstances, Pierpoint's failure to exhaust administrative remedies was not an impediment to determining whether Pierpoint had a right to be represented by a retained attorney in the disciplinary hearing in Case No. 99-2220.

In *Beaver v. Chaffee*, 2 Kan. App. 2d 364, 579 P.2d 1217 (1978), inmates of the Shawnee County jail challenged the conditions of confinement in a class action suit. The action had its genesis in separate habeas corpus petitions filed by two plaintiffs. The relief sought was declaratory and injunctive in nature. The petition set

out 58 separately numbered claims, including inadequate and over-crowded jail conditions, inadequate and poorly trained jail personnel, improper classification and segregation of inmates, improper exercise programs or rehabilitation programs, poor quality food, vague policies and procedures governing the jail, improper censoring of inmate mail, and inadequate facilities for attorney-client conferences. The district court found the plaintiffs failed to exhaust their administrative remedies, *i.e.*, the inmates had not put their grievances in writing or requested an administrative hearing to the jail staff, or alternatively, the Secretary of Corrections.

The *Beaver* court recognized the long-standing rule that where administrative remedies are available they must be exhausted before resort may be had to the courts. 2 Kan. App. 2d at 369. The court observed that the unique nature of the inmates' complaints did not lend itself to the ordinary disciplinary procedures available at the jail and could not be adequately addressed by the Secretary of Corrections, who served only in an advisory capacity to county jails. The *Beaver* court concluded that under such circumstances the prisoners had no effective administrative remedy they were required to exhaust before bringing the action. 2 Kan. App. 2d at 370.

We note that although Pierpoint did not file a formal grievance form with the Secretary of Corrections, Pierpoint's attorney made a request to appear as retained counsel to the Secretary and received a negative response. Under the circumstances, we have no reason to believe that a subsequent representation request would yield a different result. Furthermore, Pierpoint's complaint does not pertain to a specific disciplinary violation; rather, it is a justiciable legal question regarding legal representation during disciplinary procedures. We find that under these circumstances Pierpoint was not required to exhaust his administrative remedies.

*Inmates' Constitutional Right to Representation by Legal Counsel*

Although the district court did not find that Pierpoint had a constitutional due process right to be represented by his retained attorney in the class II offense disciplinary proceeding, NCF raises the constitutional issue in the appeal. Pierpoint agrees that a de-

cision by this court to uphold the ruling of the district court need not turn on constitutional issues; nevertheless, he claims there is a constitutional due process right, as well as an administrative right, to a retained attorney.

K.A.R. 44-12-1302 provides, in part:

"(a) Class II offenses are:
(1) Those offenses of moderate seriousness that are designed in this code as class II offenses, whether or not such offenses are also violations of the law;
(2) those violations of law designated by the laws of the state of Kansas as misdemeanors; or
(3) Those violations of law designated by the laws of the United States as misdemeanors."

The penalty for a class II offense may include loss of good time credits, not to exceed 3 months. It has previously been determined that good time credits already earned are a protected liberty interest because the State of Kansas has created a statutory right to those credits. *Frazee v. Maschner*, 12 Kan. App. 2d 525, 528, 750 P.2d 418, *rev. denied* 243 Kan. 778 (1988).

K.A.R. 44-6-146(a) states: "For crimes, other than off-grid crimes, committed on or after July 1, 1993, an inmate may earn good time credits which will be subtracted from the prison portion of the inmate's sentence, thereby resulting in an earlier release date from imprisonment." The total amount of good time credits earned and retained by an inmate shall be added to the period of post-release supervision applicable to the inmate's sentence. K.A.R. 44-6-146(a)(2). Under K.A.R. 44-6-146, good time credits are not *presumed*; they are *earned*. The credits are awarded at the time of the inmate's first program classification review which falls 120 days or more after the inmate's admission to the custody of the Secretary of Corrections and covers the period from the beginning date of the sentence to the date of the initial award. K.A.R. 44-6-146(c). Following the initial award, good time credits are awarded at each program classification review from credits available to be earned since the previous program classification review. K.A.R. 44-6-146(d). Subsection (g)(2) of the regulation provides: "A guilty finding of a class II disciplinary offense shall result in the withholding

of a minimum of 25% but not more than 50% of the good time credits available for that program classification review period."

The question of whether due process under the Fourteenth Amendment to the United States Constitution exists in a particular case is a question of law. *Murphy v. Nelson,* 260 Kan. 589, 594, 921 P.2d 1225 (1996). Due process, "unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 6 L. Ed. 2d 1230, 81 S. Ct. 1743, *reh. denied* 368 U.S. 869 (1961). Due process is flexible and calls for such procedural protections as the particular situation demands. *Morrissey v. Brewer,* 408 U.S. 471, 481, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972).

*Wolff v. McDonnell,* 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), is the benchmark case defining what process is required for prison disciplinary proceedings. In *Wolff,* Nebraska inmates challenged prison officials' revocation of good time credits without adequate procedures. Inmates earned good time credits under a Nebraska statute that bestowed mandatory sentence reductions for good behavior, revocable only for flagrant and serious misconduct.

The United States Supreme Court held that the Due Process Clause itself does not create a liberty interest in credit for good behavior, but because the statutory provision created a liberty interest in a shortened prison sentence which resulted from good time credits, the credits were revocable only if the prisoner was guilty of serious misconduct. 418 U.S. at 557. The Court characterized the liberty interest as one of "real substance" and articulated minimum procedures necessary to reach a mutual accommodation between institutional needs and objectives and the provisions of the Constitution. 418 U.S. at 556-67. The *Wolff* Court held that certain due process procedures in disciplinary hearings include an impartial hearing, a written notice of the charges to enable inmates to prepare a defense, a written statement of the findings by the factfinders as to the evidence and the reasons for the decision, and the opportunity to call witnesses and present documentary evidence. 418 U.S. at 563-66. *Wolff* did not require

the right to confront and cross-examine witnesses or the right to counsel in all cases. 418 U.S. at 567-70.

Pierpoint's assertion is erroneous that he has a due process right to retained counsel at his disciplinary hearing for a class II violation because, if convicted, he faces a mandatory *loss* of 25 to 50 percent of his good time. A conviction of a class II disciplinary offense shall result in the *withholding* of 25 to 50 percent of an inmate's good time credit for the program classification review period in which the violation or conviction occurred. The credits can be withheld because the inmate has not yet *earned* the credits by being violation free for the review period.

Regarding the right to counsel, the *Wolff* Court observed:

"The insertion of counsel into the disciplinary process would inevitably give the proceedings a more adversary cast and tend to reduce their utility as a means to further correctional goals. There would also be delay and very practical problems in providing counsel in sufficient numbers at the time and place where hearings are to be held. At this stage of the development of these procedures we are not prepared to hold that inmates have a right to either retained or appointed counsel in disciplinary proceedings." 418 U.S. at 570.

The *Wolff* Court concluded that an exception is necessary if the inmate is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." 418 U.S. at 570. In such instances, the inmate should be allowed the assistance of a fellow inmate or help from the prison staff.

The determination that due process does not require the assistance of counsel at prison disciplinary proceedings, even those in which a liberty interest is involved, was confirmed in *Baxter v. Palmigiano*, 425 U.S. 308, 314-15, 47 L. Ed. 2d 810, 96 S. Ct. 1551 (1976). In *Baxter*, the United States Supreme Court held that state prison inmates do not have a due process right to either retained or have appointed counsel in disciplinary proceedings, even where the charges involve conduct punishable as a crime under state law.

The *Baxter* Court noted that prison disciplinary proceedings are not part of an inmate's criminal prosecutions and, thus, are not subject to the full panoply of rights initially due a defendant. See

*Wolff*, 418 U.S. at 555-56. It concluded that in determining what process is due, three factors are generally relevant: first, the private interest affected; second, the risk of an erroneous deprivation of such interest; and finally, the government's interest. See *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976). It was the third factor which the United States Supreme Court deemed most significant in *Wolff*. The interest of prison officials in maintaining prison security and minimizing confrontations between the guards and prisoners was "the major consideration militating against adopting the full range of procedures." *Wolff*, 418 U.S. at 561.

Applying *Wolff* and *Baxter*, lower federal and state courts have generally held that in the usual disciplinary proceeding, due process does not require that an inmate be allowed to retain an attorney to defend his or her case. It is only in the exceptional case, where the inmate is unable to represent his or her own interests or an inmate faces possible felony charges as a result of the disciplinary violation, that courts find that due process requires an attorney to represent the interests of the inmate.

In *McGinnis v. Stevens*, 543 P.2d 1221 (Alaska 1975), state prison inmates brought an action for declaratory and injunctive relief alleging due process infringements resulting from arbitrary removal of statutory good time, arbitrary administration of internal prison discipline, and arbitrary administrative decisions relating to inmate institutional placements and participation in work release and educational programs. The inmates' due process claims in relation to inmate disciplinary hearings included contentions that inmates were, as a matter of constitutional due process, entitled to assistance of counsel.

The *McGinnis* court noted that since an inmate in a disciplinary proceeding is not charged with a violation of a criminal statute and the inmate's liberty as a free citizen is not threatened by potential curtailment, an inmate in a major disciplinary proceeding is not entitled to the full panoply of rights due an accused in a criminal proceeding. This conclusion was grounded in the belief that to a significant degree, disciplinary proceedings must be structured by prison authorities. 543 P.2d at 1226-27.

Regarding the right to counsel in prison disciplinary proceedings, the *McGinnis* court for the most part was in agreement with the *Wolff* decision. However, the court found that under the Alaska constitution and statutory law, more protection was afforded. Under Alaska regulations, where an inmate is accused of a felony, the case is referred to the local district attorney with a request that the district attorney advise the institution within 5 days whether a prosecution will be undertaken. If the district attorney informs the institution that a prosecution will be undertaken and the case goes to trial, the inmate is transferred to specialized housing pending the disposition of the incident. The classification committee then determines if the inmate can be returned to his or her regular program, admitted to a modified program, or retained in a specialized housing unit pending final disposition by the district attorney. That determination is made in a meeting where the inmate may choose to appear. If the inmate appears before the committee, he or she is advised of his or her *Miranda* rights.

The *McGinnis* court concluded:

"[W]e believe that counsel, either retained or appointed, is required in the situation where the inmate's alleged infraction of the institution's regime consisted of conduct which potentially constitutes a violation of the state's felony laws. As we have noted, under the Division's regulations, in such circumstances referral to the district attorney is required, and pending his determination and possibly the outcome of the trial, the inmate can be housed in 'specialized housing.' In light of the possibility of prolonged specialized housing pending disposition of the conduct referred to the district attorney's office, the possible loss of other privileges, the close nexus with possible criminal prosecution, and the inherently coercive circumstances flowing from the interim imposition of specialized housing and suspension of other prison privileges, we believe that *Miranda* rights can be best assured through provision of counsel to the inmate." 543 P.2d at 1235.

The *McGinnis* court held that in disciplinary hearings where misconduct constituting a felony is charged, a departure from the general no-counsel standard ordained by *Wolff* is in order and inmates must be afforded the assistance of counsel. 543 P.2d at 1232.

By characterizing himself as a 52-year-old, minimally educated person who is unable to present an effective defense on his own behalf, stands to lose good time credits, and could potentially be

prosecuted criminally for the acts constituting the alleged disciplinary violation, Pierpoint claims he falls within the exceptional case set out in *Wolff* and *Baxter*. He asserts that in these circumstances, he, as an inmate with resources to retain counsel, has a due process right to retain and be represented by an attorney.

In *United States ex rel. Ross v. Warden*, 428 F. Supp. 443 (E.D. Ill. 1977), the petitioner in a habeas corpus case claimed that his psychological condition made the procedures followed in a parole hearing so fundamentally unfair as to violate due process. Less than 1 week prior to Warden's parole hearing, Warden was charged with the use of narcotics not prescribed for him and possession of a knife.

Prior to the disciplinary hearing in *Warden*, retained counsel informed the prison administration that he would be available to represent his client at the disciplinary hearing. He stated that the petitioner would be unable to represent himself because of his previous psychiatric history. The retained attorney was not allowed to attend the disciplinary hearing.

At the disciplinary hearing, no arguments or appeals were made on behalf of Warden. Warden had declined staff representation. The disciplinary committee found Warden guilty of the possession of drugs and ordered that he forfeit 100 days of statutory good time. A written statement as to the evidence relied upon and the reasons for the finding were provided. The parole board subsequently denied Warden's parole application because of the disciplinary infractions.

At the time of Warden's disciplinary hearing, he was suffering from paranoid schizophrenia. Because of this condition, Warden was not able to meet the normal demands of life. Warden's behavior was affected by a distorted view of his environment. The degree of Warden's behavioral impairment varied depending on facts such as stress and anxiety. In very stressful situations, it was difficult for Warden to abstract or to contemplate the future consequences of his actions. Warden was not being treated for his condition at the prison.

The *Warden* court found that as a result of Warden's psychological condition, he was unable to defend himself against the dis-

ciplinary charge. Warden was incapable of either managing a defense or initiating any actions concerning a defense. Warden would not have been capable of presenting a defense, even if provided with the limited assistance of a staff representative. 428 F. Supp. at 445.

The only issue in *Warden* was whether Warden's due process rights were violated by the disciplinary hearing in that his mental condition made the procedures of the hearing so fundamentally unfair as to violate due process. The court reviewed *Wolff* and concluded:

"The Court agrees with respondents that based on the decisions in *Wolff v. McDonnell,* supra, and *Baxter v. Palmigiano,* supra, an inmate does not have the right to representation at the disciplinary hearing other than in the form of a staff representative. In the instant case, however, the form of staff assistance which was available to petitioner, as noted in footnote 1 of the Findings of Fact, would not have been 'adequate substitute aid' as enunciated in *Wolff,* supra, 418 U.S. at 570, 94 S. Ct. 2963. At the time of his disciplinary hearing, petitioner was not competent to represent himself; nor was he competent to direct another to represent him. A staff representative would not have acted without some direction or guidance from him and Ross himself, because of his psychological condition, was not able to provide that direction. Moreover, the facts show that a defense was not presented at the hearing. It is this Court's opinion that the instant case is distinguishable from the cases contemplated by *Wolff* and *Baxter.* This is not the case where an illiterate inmate will have difficulty communicating; it is a case where the inmate very likely will be completely unable to communicate.

"The whole purpose of providing hearings is to avoid arbitrary decision making, to afford the inmate an opportunity to present a defense, and to promote fair procedures. See *Morrissey v. Brewer,* 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). There is no protection against arbitrary action where the inmate is unable to speak for himself and is denied 'adequate substitute aid.' There is no point in holding these hearings if none of the purposes will be served. Therefore, based on the facts of this case, the Court finds that the procedures of the disciplinary hearing in question violated due process." 428 F. Supp. at 446.

In *Mahan v. State,* 541 N.W.2d 918 (Iowa App. 1995), inmates at a state minimum security facility escaped. They were apprehended and criminally prosecuted. After an administrative hearing, the men were found in violation of the facility's rule against escape. In addition to other disciplinary sanctions, the inmates lost all of their accumulated good time. The inmates' appeals to the warden were unsuccessful. The inmates subsequently filed applications for

post-conviction relief in the district court alleging an inadequate statement of reasons, arbitrary and capricious sanctions, and a need for additional procedural safeguards in disciplinary hearings due to the severity of the sanctions. The district court denied the applications. The inmates appealed, claiming the ALJ violated their due process rights and that they were entitled to additional procedural safeguards to protect their due process rights, since the penalty imposed effectively extended their prison sentences in excess of 1 year. The *Mahan* court relied on *Wolff* in holding, *inter alia*, that an attorney, retained or appointed to assist inmates in disciplinary proceedings is not necessary to satisfy due process. 541 N.W.2d at 923.

Pierpoint relies on *In re Uphoff*, 7 Kan. App. 2d 301, 641 P.2d 406 (1982), to claim that, at a minimum, staff assistance is required to satisfy due process where good time credits are at stake in a disciplinary proceeding. In *Uphoff*, the issue was prerelease parole grant rescission. The *Uphoff* court stated:

" '[D]ue process is flexible and calls for such procedural protections as the particular situation demands. . . . Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure.' " 7 Kan. App. 2d at 305 (quoting *Morrissey v. Brewer*, 408 U.S. at 481).

The *Uphoff* court held that after a parole date has been fixed and where prison officials consider rescission of the parole or deferment of the release date, the authorities should give the inmate due process consisting of: (1) written notice of the hearing and the nature of the charges; (2) a hearing; (3) an opportunity to appear, hear the evidence, confront and cross-examine witnesses, testify and present witnesses or documentary evidence; (3) a written finding with reasons. Counsel need not be furnished, but staff assistance should be provided if requested. 7 Kan. App. 2d at 305-06.

Pierpoint asserts that the similarity of liberty interests in a parole release date and good time credit which affects the release date is obvious. We find that *Uphoff* is distinguishable in that it applies to situations where a future parole date has been fixed and does not involve the same need for speedy resolution as is typically the situation in class II disciplinary cases.

Pierpoint emphasizes the tone of the Supreme Court in *Wolff*, suggesting that the Court was equivocal in holding that due process in disciplinary proceedings does not include the right to counsel—that at a later stage in the development of institutional procedures, the burden on the institution to accommodate retained counsel in disciplinary proceedings may give way to the significant benefit of allowing retained counsel to represent inmates under certain circumstances. Pierpoint asserts that without the benefit of retained counsel, he is at a disadvantage because he is not well educated or articulate, and he stresses that he stands to lose a substantial liberty interest—his good time credits. He also points out that the attorney he wants to represent him is retained, rather than appointed, and that his attorney has requested no continuances or special considerations.

In the usual class II disciplinary proceeding, due process does not require that the inmate be allowed to retain an attorney to defend his case. It is only in the exceptional case, where the inmate is completely unable to represent his interests or the inmate faces possible felony charges as a result of the disciplinary violation, that due process requires an attorney to represent the interests of such inmates. Pierpoint's limited education and relative inarticulateness do not rise to the level of a psychiatric or psychological disability such as rendered the disciplinary hearing in *Warden* arbitrary and unfair.

### Right to Retained Legal Counsel Under Department of Corrections (DOC) Regulation

The district court's order that Pierpoint had the option of retaining counsel to represent him at the disciplinary proceeding was based on DOC regulations.

K.A.R. 44-13-101 provides, in part:

"(a) The principal administrator of each facility shall establish a disciplinary procedure in accordance with these regulations.

"(b) Prosecution by criminal justice agencies in the community is a separate process from this disciplinary procedure and both prosecution and disciplinary procedures may be conducted on matters relating to the same factual situations.

. . . .

"(d) Subject to the limitations and guidelines set out in these regulations and subject to the control of the hearing officer exercised within the parameters of the law and these regulations, the inmate shall be entitled:

(1) To receive advance written notice of the charge and a fair hearing by an impartial hearing officer;

(2) to be present at the hearing;

(3) to present documentary evidence;

(4) to testify on the inmate's own behalf;

(5) to have witnesses called to testify on the inmate's behalf;

(6) to confront and cross examine witnesses against the inmate; and

(7) to be represented by counsel or counsel substitute in certain serious cases."

The issue of counsel is addressed by K.A.R. 44-13-408, which provides:

"(a) If the hearing officer finds that the charged inmate is incapable of representing himself or herself at any stage of the disciplinary hearing, the hearing officer shall appoint a staff member from an approved list to act as counsel substitute to assist the inmate at the disciplinary hearing and to question relevant witnesses. The principal administrator shall make available to the hearing officer a list of staff members available to assist the inmate as counsel substitute.

"(b) Representation by Legal Services for Prisoners, Inc., or its designee, shall be permitted only in class I offense cases. Assistance in other cases shall be limited to counsel substitute, and shall be permitted only when the hearing officer finds that the inmate is not capable of effectively collecting and presenting evidence on the inmate's own behalf. If Legal Services for Prisoners, Inc., is not available, assistance by a counsel substitute shall be permitted in class I offense cases. If the inmate does not wish to be assisted by a counsel substitute when Legal Services for Prisoners, Inc., is not available, the hearing may proceed without legal counsel or counsel substitute unless the hearing officer finds the inmate incapable of proceeding on the inmate's own behalf.

"(c) Counsel shall be considered not available in cases in which counsel fails or is not expected to appeal within three days, excluding Saturdays, Sundays, holidays, and authorized continuances.

"(d) Counsel substitute shall mean a correctional staff member. Counsel substitute shall also include Legal Services for Prisoners, Inc., in any case where the hearing officer determines that the inmate is incapable of proceeding on the inmate's own behalf, and Legal Services for Prisoners, Inc., is available and willing to represent the inmate.

"(e) Legal Services for Prisoners, Inc., may designate the University of Kansas law school defender project or Washburn university legal clinic by general designation for all members and participants of such programs on a continuing basis. When a bona fide conflict of interest exists, Legal Services for Prisoners, Inc.,

may designate a private attorney, on a case by case basis, with prior written approval by the secretary of corrections.

"(f) In a class I case, if the inmate is represented by legal counsel, the officer also shall be permitted to have representation by legal counsel. The counsel shall be provided by the staff attorney of the facility if one is on staff, or by a department staff attorney, if available."

The district court found that the administrative regulations state that Pierpoint is entitled to counsel, and NCF should have allowed him to retain counsel.

Pierpoint was charged with a class II violation and is entitled to counsel if his case falls within the class of "certain serious cases." See K.A.R. 44-13-101(d)(7). What constitutes certain serious cases is not defined in K.A.R. 44-13-101. However, K.A.R. 44-13-408 states that class I offenses are serious cases requiring the option of counsel or counsel substitute. Where the offense is not a class I offense, counsel substitute is required if the hearing officer finds that the inmate is incapable of representing himself. Here, the district court made no such finding.

Pierpoint acknowledges that the regulations do not create a right to retained counsel for an inmate charged with a class II violation. He points out, however, the regulations do not *prohibit* an inmate from retaining counsel of his choice. Pierpoint contends that NCF's denial of his request for retained counsel was arbitrary and the district court has a right to intercede where the institution has exercised discretion unlawfully, arbitrarily, or capriciously. To support this argument Pierpoint relies on *Shepherd v. Davis*, 14 Kan. App. 2d 333, 789 P.2d 1190 (1990).

In *Shepherd*, an inmate was found guilty of disciplinary charges in a hearing after he was not allowed to call material witnesses. The Court of Appeals found that administrative regulations provide that inmates accused of violations shall be entitled to call witnesses and such a request may be denied only where the testimony relates to something already disposed of, is repetitious, or is irrelevant. 14 Kan. App. 2d at 336. Because the hearing officer made no record of the reasons for denying the inmate's request for the witness, the Court of Appeals held that the burden of proof was on the prison officials, who may not arbitrarily deny an inmate's request to pres-

ent a witness. 14 Kan. App. 2d at 337. The *Shepherd* case is distinguishable.

Unlike the right to call witnesses, DOC regulations do not create an absolute right to counsel in disciplinary proceedings. Therefore, except under special circumstances, the denial of counsel in prison disciplinary proceedings need not be based on articulated reasons. Due process does not require that inmates be allowed to retain counsel in all disciplinary proceedings and the regulations do not create such right for all class II violations; therefore, the allowance of retained counsel is discretionary with the prison administration, not the courts.

Reversed.