NOT DESIGNATED FOR PUBLICATION

No. 117,387

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAVID SMITH,
*Appellant*,

v.

REX PRYOR, Warden,
*Appellee*.


MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed December 15, 2017. Affirmed.

*Michael G. Highland*, of Bonner Springs, for appellant.

*Sherri Price*, legal counsel, Lansing Correctional Facility, and *Richard M. Acosta* and *Roger W. Slead*, of Horn, Aylward & Bandy, LLC, of Kansas City, Missouri, for appellee.

Before BUSER, P.J., BRUNS, J., and STUTZMAN, S.J.

PER CURIAM: David Smith filed a K.S.A. 60-1501 petition alleging officials at Lansing Correctional Facility (Lansing) acted with deliberate indifference to his medical needs, then retaliated against him for his pursuit of administrative and legal remedies concerning his medical care and treatment. The district court granted a motion to dismiss. We find no error and affirm.

1

FACTS AND PROCEDURAL BACKGROUND

Smith is an inmate at Lansing. In March 2015, he filed a pro se petition in the Leavenworth District Court naming two individuals and two corporate entities as defendants and alleging they had denied him adequate medical care and treatment for his diagnosed diabetes disease and his heart. Smith asserted that his diabetes caused extreme pain and swelling in his lower legs, making it difficult for him to move, and the prison doctor refused to send him to a specialist concerning the lack of circulation in his legs. Smith further alleged the prison denied his requests for special diabetic shoes or a wheelchair, even when his condition rendered him unable to walk to get his meals.

With respect to his meals, Smith stated he had been on a diabetic diet, but at mealtime he was served a "C.V. tray" for those with cardiovascular conditions, rather than a meal prepared for a person with diabetes. Smith claimed he was told to accept the offered meal or not eat, and he alleged the food service contractor's supervisor told him the meals for diabetics and the meals for those with cardiovascular issues were similar, but the diabetic meal had smaller portions.

Smith also complained of issues with his heart and alleged the doctor at Lansing did not follow through on a recommendation from the medical staff at the El Dorado Correctional Facility that an electrocardiogram (EKG) be done. Smith contended these actions at Lansing constituted cruel and unusual punishment prohibited by the Eighth Amendment because the prison acted with deliberate indifference towards his serious medical needs.

In late July 2015, the parties appeared before the court, and Smith clarified to the district judge that he had intended his case to be an action for habeas corpus relief under K.S.A. 60-1501, rather than a civil suit against the named individual and corporate defendants. The district court then dismissed the individuals and designated Rex Pryor, in

2

his capacity as the warden of Lansing having Smith in his custody (Warden), as the named respondent to Smith's petition.

The Warden then responded to Smith's petition with a motion to dismiss on the basis that Smith failed to provide proof he had exhausted his administrative remedies. Smith replied, this time through appointed counsel, and provided attachments chronicling his efforts to resolve his complaints within the administrative system. Each grievance was denied, and the denials were upheld on appeal.

Smith then amended his petition to include a claim that he was the target of retaliatory actions because of his efforts to gain the medical care he considered necessary. He claimed his cell was searched twice for no good reason and two homemade weapons found during the second search were planted. Smith said he had no need for weapons as he only leaves his cell for meals, he was not involved in any activities that would require a weapon, and he did not have any enemies in the prison. Smith also alleged he was moved from medium security to the maximum security facility after the searches, and when he picked up his property two weeks after that move he found his typewriter, typewriter ribbons, and other things that he needed to do his legal work were missing.

The Warden filed another response, arguing that even if Smith had exhausted his administrative remedies, he failed to prove the prison acted with deliberate indifference to his medical needs. In support, the Warden attached a number of exhibits detailing the medical care the prison had provided to Smith. That response also asserted Smith failed to show he had exhausted administrative remedies before making his claim for retaliation and lost property.

The district court heard statements from counsel and the defendant at a short hearing, and the parties agreed to submit the issues for decision on the briefs. The court later filed a memorandum decision which noted that additional written arguments and

documents submitted after the hearing had been considered along with those available when the parties were in court. The district court granted the Warden's motion to dismiss. The court found Smith had exhausted his administrative remedies with respect to his medical claims, but he did not sustain his burden of proof on those claims. The court further found that Smith received treatment multiple times for his various medical needs but also that he had rejected multiple attempts by the prison to provide treatment. Additionally, the court found Smith had not exhausted administrative remedies for his retaliation claims and, in any case, had failed to provide sufficient evidence to sustain his burden of proof for the retaliation claim.

Smith timely appeals from the district court's dismissal.

ANALYSIS

Smith raises two issues for our review: (1) error by the district court in finding he was not subject to cruel and unusual punishment; and (2) error by the district court in rejecting his claim that the prison retaliated because he exercised his constitutional rights with respect to his medical care.

*Cruel and unusual punishment*

An appellate court reviews a district court's decision on a K.S.A. 60-1501 petition to determine whether the district court's factual findings are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. The district court's conclusions of law are subject to de novo review. *Rice v. State*, 278 Kan. 309, 320, 95 P.3d 994 (2004).

Smith claims the district court erroneously found he had failed to prove deliberate indifference towards his medical needs. Prisoners in Kansas have a right to adequate

4

medical care and treatment. *Levier v. State*, 209 Kan. 442, Syl. ¶ 2, 497 P.2d 265 (1972). Deliberate indifference by prison officials towards an inmate's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). This court has explained that "[d]eliberate indifference involves both an objective and a subjective component." *Darnell v. Simmons*, 30 Kan. App. 2d 778, 781, 48 P.3d 1278 (2002). The objective component is satisfied if the deprivation is "'sufficiently serious.'" 30 Kan. App. 2d at 781 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 84 [1994]). "A medical need is sufficiently serious if treatment has been diagnosed for it or if the need is so obvious that a lay person would recognize the need." *Laubach v. Roberts*, 32 Kan. App. 2d 863, 872, 90 P.3d 961 (2004). "The subjective component is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" *Darnell*, 30 Kan. App. 2d at 781 (quoting *Farmer*, 511 U.S. at 837).

Here, the objective component of the deliberate indifference test is undisputed. Smith has diabetes, which is a sufficiently serious diagnosed medical need that treatment was prescribed for it. The contested issue is the district court's conclusion that the evidence Smith provided was insufficient to meet the subjective component of the test. Smith's evidence on this point consisted of his allegations that the prison failed to provide him with special shoes and a wheelchair, failed to arrange an evaluation of his heart through an EKG performed by a medical professional outside the prison system, and failed to provide him with meals specifically prepared for a diabetic diet.

Many of Smith's complaints were addressed by the prison. After Smith filed his petition, the record shows the prison provided him with diabetic shoes and a wheelchair, which was acknowledged by Smith's counsel at the March 2016 hearing. Smith also complained that the prison refused to send him for an EKG. However, prison records provided to the district court show a history of Smith refusing medical care and treatment. Those records included documentation that in April 2014, Smith refused

5

treatment in the form of lab work, with the explanation that "I don't need it Dr. said my heart was fine," and in July 2015 prison records documented Smith's refusal of a routine EKG.

Smith alleged the prison's food service contractor failed to offer him prescribed 1,800 calorie meals for his diabetic condition, forcing him to choose between a CV meal or a regular meal. A response from the food service manager to Smith's November 2014 grievance disputed Smith's claim, asserting that "[d]iabetic trays are offered at every meal." The manager commented that "[t]he diabetic 1800 and CV tray are normally very similar. The most common difference is smaller portions on the diabetic 1800 tray." Among Smith's documented treatment refusals in the record is one from December 2014, stating Smith "does not want diabetic diet." The reported explanation for the refusal was "does not want the diabetic diet states it's no different than the regular and will try to regulate his own diet and stay around 1800 cal." A similar instance was recorded earlier, in March 2014, noting Smith "[r]efuses diabetic diet."

The record shows prison officials did not ignore or fail to treat Smith's medical condition. Smith had a number of consultations with doctors in the past few years. Smith had a physical examination in October 2012 in which his poor circulation and potential for diabetes were noted. Medical officials discussed diabetic management and education with Smith. In January 2013, officials noted a complication with Smith's diabetes caused by his failure to adhere to his diet. In May 2013, Smith's doctor noted that Smith was in a prediabetic state and recommended that Smith exercise and lose weight. In 2014, Smith began refusing chronic care treatment for his diabetes, "including refusing to maintain a diabetic diet, show up for scheduled chronic care evaluations, refusal of blood work, and refusing treatment with diabetic medication."

Smith received the diabetic shoes and wheelchair he contends he needed and was offered frequent medical consultations, although the record also shows a history of

noncompliance with medically recommended care and treatment. Based on the record, we find no support for Smith's claim that prison officials knew of an excessive risk to Smith's health or safety and disregarded it. The district court's findings were supported by substantial competent evidence, and the court's conclusion that Smith failed to prove deliberate indifference is amply supported by the record. Smith failed to support his claim on the subjective component of the test, and the district court did not err in rejecting it.

*Retaliation*

Smith's other issue relates to the retaliation claim he added as an amendment to his petition, asserting the prison authorities had unlawfully retaliated against him for exercising his constitutional right to challenge the health care offered to him. The district court held that Smith did not exhaust his administrative remedies for this claim and, even if he had, the evidence Smith offered was insufficient to meet his burden of proof.

Engaging in the administrative remedy process is a statutory requirement:

"Any inmate in the custody of the secretary of corrections or in a county jail, prior to filing any civil action naming the state of Kansas, any political subdivision of the state of Kansas, any public official, the secretary of corrections, the warden, the sheriff, or an employee of the department of corrections or the county, while such employee is engaged in the performance of such employee's duty, as the defendant pursuant to the rules of civil procedure, shall have exhausted such inmate's administrative remedies, established by rules and regulations promulgated by the secretary of corrections or by county resolutions, concerning such civil action. Upon filing a petition in a civil action, such inmate shall file with such petition proof that the administrative remedies have been exhausted." K.S.A. 75-52,138.

Whether a party was required to or has failed to exhaust administrative remedies presents a question of law subject to unlimited review. *In re Habeas Corpus Application*

*of Pierpoint*, 271 Kan. 620, 622-23, 24 P.3d 128 (2001). "[B]efore conditions of confinement may be reviewed in a habeas corpus proceeding, available administrative remedies must be exhausted." 271 Kan. at 622. However, "[e]xhaustion of administrative remedies is not required when administrative remedies are inadequate or would serve no purpose." 271 Kan. 622, Syl. ¶ 2.

Smith tacitly admits he did not exhaust his administrative remedies before adding his retaliation claim to his petition in the district court. The district court specifically found no evidence was presented to show Smith tried to address his retaliation claim through the grievance process or other administrative remedy. Smith argues, however, that he was not required to exhaust administrative remedies because doing so would have been futile. Since he is alleging retaliation by the Warden and prison staff for filing grievances regarding his medical care, Smith contends pursuing the grievance process to remedy a claim of retaliation "would only antagonize and invite further retaliation . . . ."

The record shows Smith filed his first grievance related to medical care in August 2013 and his last in November 2014. The searches of Smith's cell and his transfer to maximum security—the events he characterizes as retaliatory—did not occur until September 2015. The timing of those events, almost a year after Smith filed his final grievance, does not support a conclusion of retaliation. See *Matson v. State*, No. 114,001, 2016 WL 4584824, at *4 (Kan. App. 2016) (unpublished opinion) (holding that there was no temporal basis to support a retaliation claim when the alleged retaliation occurred five months after an inmate filed grievances), *rev. denied* 306 Kan. ___ (2017). Even accepting Smith's theory of deferred retaliation, the contraband weapons Smith stated guards found on the second search of his cell, which he alleges were planted there, constituted a legitimate reason for transferring him. Further, Smith presented no basis to suggest his grievances over medical care and treatment generated a negative response. Smith received or was offered medical care for his diabetes and heart concerns, and he

received the shoes and wheelchair he had requested. Smith's claim for a futility exception to the administrative remedy requirement is not supported by the evidence.

The district court's finding that Smith failed to pursue administrative remedies was supported by competent evidence, and by Smith's own argument, and the district court's conclusion that Smith presented insufficient evidence to carry a retaliation claim was also supported in the record.

*Conclusion*

We find no error by the district court in the dismissal of Smith's K.S.A. 60-1501 petition.

Affirmed.