NOT DESIGNATED FOR PUBLICATION

No. 119,135

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RHEUBEN JOHNSON,
*Appellant*,

v.

SAM CLINE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed October 19, 2018. Affirmed.

*Matthew L. Tillma*, of Law Office of Gregory C. Robinson, of Lansing, for appellant.

*Sherri Price*, special assistant attorney general, Lansing Correctional Facility, for appellee.

Before BUSER, P.J., ATCHESON, J., and WALKER, S.J.

PER CURIAM:  Rheuben Johnson appeals the district court's summary dismissal of his petition under K.S.A. 60-1501. The petition alleged that officials at Lansing Correctional Facility (LCF) violated his due process rights at a disciplinary hearing and engaged in shocking and intolerable conduct. Because we find no error on the part of the district court, the dismissal is affirmed.

1

Johnson, an LCF inmate, worked in the prison kitchen, where he was given easy duties because of his illness. Johnson was regularly scheduled to report for work at 6 a.m. Johnson alleged that his boss told him that he did not need to arrive at work at 6 a.m. because his job could be done at any time. Instead of arriving at 6 a.m., Johnson indicated he would go to work around 1 or 2 p.m., and occasionally at 10 a.m. Johnson said that his supervisors had given him permission to work a more flexible schedule. Johnson also alleged that he was never told that he needed to work his regularly scheduled hours.

In early October 2017, Johnson went to work at around 9:45 a.m. and a supervisor told him that he was supposed to be at work earlier. Reporting Officer Randall Singletary wrote a disciplinary report that stated Johnson refused to come to work at his scheduled time, in violation of K.A.R. 44-12-401.

Prior to a hearing on the disciplinary report, Johnson made several requests for witnesses and to preserve evidence. The hearing officer granted his request to call his boss, who allegedly told him he did not need to be at work at 6 a.m. But his request to have Singletary present as a witness was denied because Johnson admitted to not going to work at 6 a.m. Even though the request was denied, Singletary was present at the hearing as the reporting officer. Johnson's request to call another kitchen employee as a witness was denied for a similar reason. An additional request by Johnson for witness testimony from correctional officers on duty in September, who would testify about Johnson's sleeping habits and that Johnson would not have been able to hear a call for him to go to work, was denied as irrelevant.

Johnson also requested counsel for the hearing. The request was denied due to the procedural posture of the complaint. Other evidentiary requests were denied as irrelevant to the issue of Johnson's work schedule and his failure to appear at work on time.

Hearing Officer Miller presided at the hearing on the disciplinary report. Reporting Officer Singletary did not add anything to his written disciplinary report. Miller asked whether Johnson went to work at 6 a.m. on the day in question. Johnson stated that he came in around 10 a.m. because his boss told him that he could come in whenever he wanted.

Johnson called his boss to testify. Johnson's boss testified that his work hours were 6 a.m. until he was done. Johnson was then able to leave and return later in the day to finish any additional work. Johnson's boss testified that Johnson did not have permission to start his shift late. Additionally, Johnson's boss testified that the schedule was posted in the kitchen and at each unit. Johnson then stated that he was sick on the day in question and that no one told him to go to work at 6 a.m. Johnson's boss stated that he did not receive a sick call from Johnson.

The hearing officer found that it was more likely true than not that Johnson was guilty of violating K.A.R. 44-12-401. The officer stated that while "Johnson may have had a lenient schedule . . . Johnson was to report to work at 6 am every morning." LCF documents in the record indicate that Johnson was sanctioned with "V/R C/S IMP." Although there is no explanation of these abbreviations within documents from the prison, we do note from the record that the district court referred to V/R as "Verbal Reprimand."

Johnson alleges he was sanctioned with a loss of access to his television as a result of his movement from minimum security to maximum security. He also complains about the forfeiture of anticipated good time credits by the prison.

Johnson appealed the decision through the administrative process. The warden upheld the decision. Johnson appealed the decision to the Secretary of Corrections, who

likewise upheld the ruling. Johnson filed a K.S.A. 60-1501 petition with the district court challenging the decisions of prison officials as well as his sanctions.

The district court summarily denied the petition in February 2018, holding that Johnson did not allege, nor did the record indicate, that he lost any protected liberty interest that would trigger court review under K.S.A. 60-1501. Johnson has timely appealed the district court's decision.

ANALYSIS

On appeal, Johnson argues that his due process rights were violated because he was not allowed to present witnesses or other evidence at his disciplinary hearing. He contends that he was deprived of a liberty and property interest when he lost anticipated good time credits and the opportunity to possess personal property.

K.S.A. 2017 Supp. 60-1501 allows a prisoner to file a petition for a writ of habeas corpus. The petition must allege shocking and intolerable conduct or continuing mistreatment of a constitutional statute. *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). The district court may summarily dismiss the petition "if, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists." 289 Kan. at 648-49.

Generally, courts do not review prison disciplinary decisions. *May v. Cline*, 304 Kan. 671, 674, 372 P.3d 1242 (2016). "'The requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board.'" 304 Kan. at 674 (quoting *Sammons v. Simmons*, 267 Kan. 155, Syl. ¶ 3, 976 P.2d 505 [1999]). This court does not conduct an independent assessment of the credibility of witnesses, nor does it reweigh the evidence. *May*, 304 Kan. at 674.

4

*Due process claims*

Determining whether a petitioner has been deprived of due process is a two-step analysis. First, the court must determine whether the State deprived the prisoner of life, liberty, or property. If so, the court then determines the extent and nature of the process due. *Johnson*, 289 Kan. at 649.

Johnson alleges he lost access to his television and was deprived of anticipated good time credits due to his violation of K.A.R. 44-12-401. The record seems to show that he only received a verbal reprimand as a result of this disciplinary complaint. In either event, it is apparent to us that Johnson was not deprived of a liberty or property interest. Nonetheless, we will address Johnson's allegations that he lost access to his television and forfeited anticipatory good time credits.

K.A.R. 44-12-201 et seq. allows inmates to possess certain personal property, including televisions, while incarcerated. According to Johnson, he lost access to his television due to a change in his security level in prison.

Kansas courts have held that the mere loss of access to personal property such as a television does not implicate due process concerns. *Stansbury v. Hannigan*, 265 Kan. 404, 420, 960 P.2d 227 (1998). In *Stansbury*, the court reasoned that once an inmate loses ownership of property due process rights are implicated. But merely losing access to personal property does not take away the individual's ownership of the property. 265 Kan. at 420. Johnson's petition does not allege that he lost ownership of his television, only that he lost access to it. Therefore, there are no due process rights afforded to Johnson's loss of access to his television. See 265 Kan. at 420.

Johnson's argument that his loss of anticipated good time credits implicated due process concerns is also unpersuasive. Inmates have a protected liberty interest in good

time credits already earned, but Johnson did not lose any already earned good time credits. Instead, he lost anticipatory good time credits. An inmate does not have a liberty interest in anticipatory good time credits. *In re Habeas Corpus Application of Pierpont*, 271 Kan. 620, Syl. ¶ 8, 24 P.3d 128 (2001). Johnson's argument fails because he had no protected liberty interest in the anticipatory good time credits that he did not earn. See 271 Kan. 620, Syl. ¶ 8.

Because the State did not deprive Johnson of a protected liberty or property interest, we need not address whether the disciplinary hearing provided the proper amount of process. See *Johnson*, 289 Kan. at 649. But we do note that Johnson's boss in the kitchen essentially corroborated the contents of Officer Singletary's disciplinary report. Thus, there is "some evidence" to support the disciplinary administrator's ultimate decision. Because there was some evidence, Johnson was afforded due process. See *May*, 304 Kan. at 674.

*Claims of shocking and intolerable conduct*

Johnson also argues that even if he was not deprived of a protected liberty or property interest, then the conduct of the prison officials was shocking and intolerable.

Johnson makes several allegations in his petition that he argues amount to shocking and intolerable conduct. First, he alleges that Hearing Officer Miller acted as a prosecutor and that Reporting Officer Singletary was not actually present at the hearing. However, the record does not support Johnson's allegations. Several of Johnson's allegations deal with the presence of Singletary, and none are supported by the record, which indicated that Singletary was, in fact, in attendance.

Johnson also alleges that it was shocking and intolerable that he was not allowed to present certain evidence, such as evidence that the intercom system was not working or

6

video evidence that he did arrive at work that day. But none of that evidence was relevant to the issue of whether Johnson arrived at work as scheduled. The schedule was posted in two locations. Johnson knew or should have known when he was supposed to arrive at work. We cannot conclude that denying Johnson's evidence requests was shocking or intolerable.

Finally, Johnson argues that the reason for denying his request for counsel was not recorded at the hearing in violation of K.A.R. 44-13-502a. But the record does provide a reason for why his request for assistance of counsel was denied, i.e., that there was no procedural requirement for such appointment. And this position is fully supported by our caselaw. "State prison inmates do not have a due process right to either retained or appointed counsel in disciplinary hearings, even where the charges involve conduct punishable as a crime under state law." *Dawson v. Bruce*, 36 Kan. App. 2d 221, Syl. ¶ 5, 138 P.3d 1234 (2006).

In summary, we hold that Johnson has failed to show any conduct by prison officials that was shocking or intolerable. Therefore, he is not entitled to relief under that theory.

Affirmed.