No. 128,733

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ANTHONY TALKINGTON,
*Appellant*,

v.

DAN SCHNURR, WARDEN,
*Appellee*.

SYLLABUS BY THE COURT

There is no requirement under Kansas law that an inmate who believes the Kansas Department of Corrections is refusing to follow a court order awarding jail credit must exhaust the administrative procedures found in K.A.R. 44-15-10.

Appeal from Reno District Court; DANIEL D. GILLIGAN, judge. Submitted without oral argument. Opinion filed January 16, 2026. Reversed and remanded with directions.

*Christopher S. O'Hara*, of O'Hara & O'Hara LLC, of Wichita, for appellant.

*Jon D. Graves*, legal counsel, Kansas Department of Corrections, for appellee.

Before ARNOLD-BURGER, P.J., MALONE and BOLTON FLEMING, JJ.

BOLTON FLEMING, J.: Anthony Talkington is an inmate serving his sentence in the Kansas Department of Corrections (KDOC). He alleges the KDOC has ignored the order from district court awarding him jail credit against his sentence and as a result has incorrectly calculated his release date. Talkington filed an inmate request form with the correctional facility challenging the computation. KDOC responded that the issue Talkington raised was not a grievable issue. After this denial, Talkington filed a K.S.A.

1

60-1501 petition in district court. The district court summarily dismissed his petition, finding he did not properly exhaust required administrative remedies. Talkington appeals.

After a thorough review of the record, we find that the district court erred in summarily dismissing Talkington's K.S.A. 60-1501 petition. We find that the issue raised by Talkington does not require any further administrative procedure under Kansas law, and any further attempt by Talkington to obtain administrative relief would have been futile. Accordingly, we reverse the decision of the district court and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Anthony Talkington is an inmate serving his sentence in a KDOC facility in Reno County. He is serving sentences for six criminal cases occurring between 2019 and 2023. Talkington believes the KDOC miscalculated his release date based on the jail credit awarded in district court and seeks to remedy that mistake.

Talkington's first step in notifying KDOC of the alleged error was filing a form titled, "Inmate Request to Staff Member," with Unit Team Brock on August 26, 2024. In that form, Talkington alleged that KDOC did not follow the district court's order in calculating his release date. KDOC responded to his request on the same form, finding "sentence computation is not grievable." KDOC's response was not dated.

On September 20, 2024, and September 23, 2024, respectively, Talkington filed a petition and an amended petition pursuant to K.S.A. 60-1501 in district court, the only difference between the two pleadings being that Talkington attached his Inmate Request to Staff Member form to the latter. In his amended petition, Talkington alleged that the district court specifically ordered jail credit in each of his six cases, but KDOC is "not following the order of the District Court Judge." Talkington provided the details of each

2

of his criminal cases, including the exact amount of credit the district court awarded in each case. By Talkington's calculation, January 26, 2026, should be his latest possible release date. And Talkington's calculation did not include any good time credit earned while incarcerated at the KDOC. The KDOC listed Talkington's earliest possible release date as September 17, 2027. In his amended petition, Talkington did not argue that he was denied good time credit while at the KDOC—he simply argued that the KDOC was refusing to apply court-ordered jail time credit against his sentence.

The district court found Talkington did not "sufficiently exhaust available administrative remedies" and summarily dismissed his claim. Talkington appeals.

ANALYSIS

DID THE DISTRICT COURT ERR IN SUMMARILY DISMISSING TALKINGTON'S K.S.A. 60-1501 PETITION?

*Standard of Review*

When a district court declines to issue a writ from a habeas corpus petition, the appellate court is "in just as good a position as the district court to determine whether it plainly appears from the face of the petition and any supporting exhibits that the plaintiff is entitled to no relief. Thus, an appellate court's review of a summary denial of a K.S.A. 60-1501 petition is de novo." *Denney v. Norwood*, 315 Kan. 163, 175, 505 P.3d 730 (2022).

"Whether a petitioner has failed to exhaust administrative remedies is a question of law over which we have unlimited review." *Boyd v. Werholtz*, 41 Kan. App. 2d 15, 16-17, 203 P.3d 1 (2008). See also *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 622-23, 24 P.3d 128 (2001).

3

Further, due process claims are "a question of law over which we have unlimited review." *Hogue v Bruce*, 279 Kan. 848, 850, 113 P.3d 234 (2005).

*Discussion*

The Kansas Supreme Court recently articulated the two ways a district court can address a K.S.A. 60-1501 petition:

> "First, when presented with the petition for a writ of habeas corpus, the court may determine from the face of the petition and any attached exhibits that the petitioner is entitled to no relief and deny the petition summarily. Second, the court may determine from the petition and attached exhibits that the petitioner may have a right to relief, in which case the court should issue a writ of habeas corpus, appoint counsel, order the respondent to file an answer, hold a hearing, and determine the cause." *Denney*, 315 Kan. 163, Syl. ¶ 5.

To state a claim for relief under K.S.A. 60-1501 and avoid summary dismissal, a "petition must allege 'shocking and intolerable conduct or continuing mistreatment of a constitutional stature.'" 315 Kan. at 173 (quoting *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 [2009]). The district court must accept the facts presented by the inmate as true. If the court determines the petitioner is not entitled to relief, "no cause for granting a writ" should be provided and the court must dismiss the petition. In those cases, summary dismissal is proper. 315 Kan. at 173.

We note that Talkington filed his amended petition without leave of court three days after filing his original petition. In his brief, Warden Dan Schnurr argues, "Petitioner's action filing an amended petition without the court's leave is not a civil procedure authorized by Denney (supra) nor by the habeas statutes." But Schnurr only incidentally raises this point and fails to fully argue the same. Because this point was only raised incidentally in Schnurr's brief it is deemed abandoned. *State v. Meggerson*, 312

4

Kan. 238, 246, 474 P.3d 761 (2020); *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017). We also acknowledge that Talkington raised no new claims in his amended petition—he simply attached the form he failed to attach to the original petition.

*Exhaustion of Administrative Remedies*

K.S.A. 75-52,138 requires that an inmate in custody exhaust administrative remedies prior to bringing an action in the district court. The statute also requires that the inmate file proof that administrative remedies have been exhausted with the petition:

> "Any inmate in the custody of the secretary of corrections or in a county jail, prior to filing any civil action naming the state of Kansas, any political subdivision of the state of Kansas, any public official, the secretary of corrections, the warden, the sheriff, or an employee of the department of corrections or the county, while such employee is engaged in the performance of such employee's duty, as the defendant pursuant to the rules of civil procedure, shall have exhausted such inmate's administrative remedies, established by rules and regulations promulgated by the secretary of corrections or by county resolutions, concerning such civil action. Upon filing a petition in a civil action, such inmate shall file with such petition proof that the administrative remedies have been exhausted." K.S.A. 75-52,138.

Here, the district court summarily dismissed Talkington's petition because he failed to exhaust administrative remedies:

> "This case was filed as a Habeas Corpus under K.S.A. 60-1501. Petitioner seeks relief from what he believes are sentence computation errors surrounding jail credit in multiple cases. K.S.A. 75-52,138 requires an inmate to exhaust the available administrative remedies before bringing an action in district court and to file proof of such exhaustion with the K.S.A. 60-1501 petition. *Boyd v. Werholtz*, 41 Kan. App. 2d 15, 17, 203 P.3d 1 (2008). Nothing was attached or included with the initial petition and the only thing attached to the amended petition was a 'Form 9' request to 'Unit Team Brock.' No further documentation was or has since been added.

5

"The grievance procedure is found in K.A.R. 44-15-101A, however sentence computation falls under K.A.R. 44-15-101A(d)(2) dealing with the classification decision-making process it is not considered a grievable issue. As such, the Form 9 would have served as the first step in the grievance process for the Unit Team to direct the Petitioner on the next step. The attached, filed documentation cannot support a finding that Petitioner sufficiently exhausted available administrative remedies. This is a strict requirement, and the court is guided to dismiss cases that fail to comply. See *Laubach v. Roberts*, 32 Kan. App. 2d 863, 868-70, 90 P.3d 961 (2004).

"THEREUPON, after consideration of the petition, attached documents, regulations, and case law, the case is dismissed."

Our first step in considering whether Talkington exhausted his administrative remedies is to determine the nature of the relief he sought. This is important because the required administrative procedures under Kansas law vary depending on what relief is being sought by the prisoner. Talkington's grievance was a single paragraph on the Inmate Request to Staff Member Form:

"I am turning this in because KDOC/Computation Board is not following the letter of the law and the Court order by my Judge Tyler Rousche in Sedgwick Co. By them following it I would have already been released. Just would like to resolve this. Thank you."

Talkington filed his grievance on August 26, 2024. The KDOC responded on the face of the same form but did not date its response. It simply responded, "Sentence computation is not grievable." The KDOC did not address the merits of Talkington's claim.

Talkington then filed his K.S.A. 60-1501 petition on September 20, 2024. He initially failed to attach his Inmate Request to Staff Form, so he filed an amended petition on September 23, 2024, with that attachment. There were no other changes in the amended petition. Talkington argued in the amended petition that he was being

6

wrongfully restrained because the KDOC did not follow the order of the Sedgwick County District Court. The Sedgwick County District Court specifically ordered the amount of in custody credit that was to be awarded to Talkington in each case, and Talkington believed the KDOC was refusing to apply that credit to his sentence.

Having defined the nature of Talkington's grievance, we turn to Kansas law to determine what administrative procedures applied to the resolution of that grievance.

The grievance procedure that applies to all *grievable* matters is found in K.A.R. 44-15-101. This regulation describes a three-step grievance administrative procedure that must be followed prior to filing a K.S.A. 60-1501 petition:

> "(d) The grievance procedure shall incorporate several levels of problem solving to assure solution at the lowest administrative level possible.
>
> (1) Level 1. The inmate shall first submit the grievance report form to an appropriate unit team member of the facility. The parolee shall first submit the form to the parole officer.
>
> (2) Level 2. The inmate shall then submit the grievance report form to the warden of the facility. The parolee shall then submit the form to the regional parole director.
>
> (3) Level 3. If not resolved, the grievance may be next submitted to the office of the secretary of corrections. Either a response to the grievance or referral of the matter to a deputy secretary of corrections for additional investigation, if necessary, shall be made by the warden. Grievances of inmates may be referred by the secretary to the deputy secretary of corrections for facility management. Grievances of parolees may be referred by the secretary to the deputy secretary of corrections for community and field services management." K.A.R. 44-15-101(d).

The question here is whether Talkington's claim was actually a *grievable* matter. If Talkington's claim is grievable and governed by K.S.A. 44-15-101, then he clearly has not satisfied the three-step administrative procedure.

K.A.R. 44-15-101a(d)(1) describes the matters that *are* specifically grievable. They include "[c]omplaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections" and "actions by employees and inmates, and incidents occurring within the facility." K.A.R. 44-15-101a(d)(1). The plain language of the regulation does not appear to specifically include grievances over the application of court-ordered jail credit.

> "It is a fundamental rule of statutory construction that when a statute is plain and unambiguous, this court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. *Martindale v. Tenny,* 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992). This same rule of construction should apply to construing regulations, including the regulation at issue here." *Ussery v. Kansas Dept. of SRS*, 258 Kan. 187, 194, 899 P.2d 461 (1995).

The district court framed Talkington's grievance as describing "sentence computation errors surrounding jail credit in multiple cases." It found that sentence computation is considered a "classification decision making process" under K.A.R. 44-15-101a(d)(2):

> "(2) The grievance procedure shall not be used in any way as a substitute for, or as part of, the inmate disciplinary procedure, the classification decision-making process, the property loss or personal injury claims procedure, or the procedure for censorship of publications specified in the secretary's internal management policy and procedure." K.A.R. 44-15-101a.

The district court provided no authority for determining that Talkington's grievance concerned a "classification decision making process." And we find no authority that supports that conclusion. To the contrary, a "classification decision making process" appears to refer to the classification process described in K.A.R. 44-5-104(a), which explains the "security classification assigned to each inmate shall determine the security measures which are to be applied to that inmate at any particular time and under various

8

circumstances." K.S.A. 44-5-104(a). Kansas courts have found that the "classification decision making process" refers to security classification. See, e.g., *Bankes v. Simmons*, 265 Kan. 341, 343, 963 P.2d 412 (1998); *Bankes v. State*, No. 74,718, 1996 WL 35070446, at *1 (Kan. App. 1996) (unpublished opinion) (rejecting inmate's claim that he was a minimum security inmate under K.A.R. 44-5-104).

Talkington's challenge does not involve the "classification decision making process" under K.A.R. 44-15-101a(d)(2). Even if Talkington's grievance could be classified as a "classification decision making process," the district court then incorrectly applied the three-tier administrative requirements found in K.A.R. 44-15-101(d). Grievances that fall under K.A.R. 44-15-101a(d)(2) such as classification decisions, inmate discipline, property loss, personal injury claims, and censorship of publications are specifically exempted from the process found in K.A.R. 44-15-101(d). If Talkington's claim *was* actually a challenge to a "classification decision making process," he would not have been required to exhaust any further administrative procedure, and our inquiry would end here.

So, since the calculation and application of jail credit is not specifically included as a grievable matter under K.A.R. 44-15-101a(d)(1) or specifically excluded under K.A.R. 44-15-101a(d)(2), neither regulation answers the question of what administrative procedures Talkington was required to exhaust.

*Applicable Statutes and Regulations*

K.S.A. 2024 Supp. 21-6615(a)(1) gives a district court judge the authority to compute the date a defendant's sentence begins to run.

> "(a)(1) In any criminal action in which the defendant is convicted, the judge, if the judge sentences the defendant to confinement, shall direct that for the purpose of computing the defendant's sentence and parole eligibility and conditional release dates thereunder, that

9

such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment." K.S.A. 2024 Supp. 21-6615(a)(1).

That statute also provides that "[t]he defendant shall be entitled to have credit applied for each day spent incarcerated." K.S.A. 2024 Supp. 21-6615(a)(1).

Two Kansas administrative regulations also address sentence computation. First, K.A.R. 44-6-138 clarifies that "[e]ach sentence begins date shall reflect all jail credit." Then, K.A.R. 44-6-101 provides a number of definitions related to sentence computation. Of importance are two provisions found in K.A.R. 44-6-101(e):

> "(e) For purposes of sentences computation, as used in this article, terms dealing with calculation of specific dates in the execution of sentences shall be defined as follows:
> (1) 'Sentencing date' means the date on which the sentence is imposed by the court upon conviction. 'Sentencing date' is also known as the sentence imposition date.
> (2) 'Sentence begins date' means the calendar date on which service of the sentence is to begin running. This date, *as established by the court,* shall reflect the time allowances as defined in jail time credit. This date shall be adjusted by department of corrections staff *if prison service credit is applicable.* If no jail credit is involved but prison service credit exists, the prison service credit shall be subtracted from the sentence imposition date to determine the sentence begins date." (Emphasis added.) K.A.R. 44-6-101(e).

Two things stand out in this regulation. First, the "sentencing begins date" is "established by the court"—not the KDOC. And the "sentence begins date" shall be adjusted by the KDOC "if prison service credit is applicable." K.A.R. 44-6-101(e). But Talkington's claim does not involve service credit. Thus, only the district court could adjust Talkington's "sentence begins date." K.A.R. 44-6-101(e).

This makes sense because under K.A.R. 44-6-106(a), KDOC staff "shall have the authority to analyze and interpret the journal entry of judgment, the judgment form, and any other documents from the court to the extent necessary to execute the sentence and

10

commitment." But under K.A.R. 44-6-106(c), if the KDOC interpretation results in something different than what the district court ordered, and "correction of a journal entry is necessary, the authorized staff shall refer the matter to the sentencing court and notify either the county or district attorney and the defense attorney." Only the district court has the ability to modify jail credit awarded to an inmate—not the KDOC.

The fact that the KDOC is without authority to modify the sentence begins date or jail credit awarded is relevant as we consider Kansas cases that examine the exhaustion of administrative remedies.

Boyd

In *Boyd v. Werholtz*, 41 Kan. App. 2d 15, 203 P.3d 1 (2008), a panel of our court considered whether an inmate exhausted his administrative remedies for the purpose of filing a petition pursuant to K.S.A. 60-1501. Boyd had pled guilty to several crimes in 1992 and received multiple consecutive sentences. He was then transferred to the Washington State Department of Corrections pursuant to the Interstate Corrections Compact (ICC), K.S.A. 76-3001 et seq. In 2006, Boyd wrote a letter to the Secretary of the KDOC, stating that his sentence had been "'grossly miscalculated'" and that he had not been awarded any "'good time'" or earned "'good time'" credit. 41 Kan. App. 2d at 16. Boyd sent another letter in May 2007 to his correctional counselor at the KDOC, raising the same claims he raised in April 2006. Boyd did not receive a response from the KDOC to either letter. On July 9, 2007, Boyd filed suit for a writ of habeas corpus and claimed he had exhausted his administrative remedies. The district court dismissed Boyd's actions because he failed to exhaust his administrative remedies. On appeal, our court held that K.S.A. 75-52,138 requires an inmate in custody to exhaust available administrative remedies before bringing an action in the district court. The court found that Boyd was required to follow the KDOC grievance procedure in K.A.R. 44-15-101 et seq. Because

Boyd took no additional steps beyond sending the two letters, the panel affirmed the district court. 41 Kan. App. 2d at 17-18.

While at first glance *Boyd* might seem applicable to our current case, there is a notable difference—here, Talkington is not arguing that the KDOC failed to award him "good time" or service credit. He is alleging that the KDOC is refusing to follow the orders of the district court. The decision to award "good time" or service credit is certainly within the discretion of the KDOC and not the district court. See K.A.R. 44-6-115a ("[a]warding and withholding good time credits for incarcerated offenders"). It follows that an inmate would be required to follow an administrative procedure geared toward the resolution of a dispute involving whether KDOC properly awarded *good time credit*. But *Boyd* is not relevant to the resolution of an inmate dispute that alleges the KDOC is refusing to follow a valid district court order awarding *jail credit*.

Chambers

Not long after *Boyd* was decided, a panel of our court considered *State v. Chambers*, No. 100,493, 2009 WL 2436683 (Kan. App. 2009) (unpublished opinion). Chambers appealed the denial of his motion challenging the Kansas Department of Corrections' application of his jail credit.

Chambers pled guilty in a felony forgery case, and the sentencing journal entry noted that Chambers was entitled to 117 days of jail credit. Chambers later pled guilty in two additional felony cases and was sentenced in both cases on the same day. The sentences were ordered to run concurrent. In the first case, Chambers was awarded 277 days jail credit in the sentencing journal entry and in the second case the sentencing journal entry reflected 180 days jail credit. After sentencing was complete in all three cases, Chambers filed a motion requesting additional jail credit, which was denied.

12

Chambers started serving his sentences in the KDOC. He claimed that the KDOC was applying credit from only one of the three sentencing journal entries and therefore had not awarded him all the jail credit to which he was entitled. He asked the trial court to enter an "order of a Nunc Pro Tunc combining all 3 cases on 1 Journal Entry." In his pleading, Chambers explained he was not asking for additional jail credit; rather, he wanted the district court's assistance in ensuring KDOC applied all ordered credit. The district court denied Chambers' motion. *Chambers*, 2009 WL 2436683, at *1.

Next, Chambers asked that his motion be reconsidered by a different judge. In that pleading, he also indicated he was raising the same issues in a separate K.S.A. 60-1507 motion. Attached to his motion was an inmate request form dated April 11, 2006, where KDOC had denied Chambers' request for additional jail credit. Chambers' K.S.A. 60-1507 motion was transferred to Cowley County, where he was being confined. The trial court ruled that Chambers' two pending motions were moot because Cowley County was the proper venue.

Chambers then filed an additional motion:

> "Finally, Chambers filed the motion that is the subject of this appeal. He again alleged that the KDOC erroneously altered the jail credit to which he was entitled. The State responded that the issue of jail credit must be litigated in the county of confinement and requested the motion be transferred to Cowley County. The State later filed an amended response in which it maintained that Chambers' motion should be litigated in Cowley County, but it also contended that Chambers was not entitled to relief on the merits of his claim because the KDOC had properly calculated his jail credits.
>
> "The trial court denied Chambers' motion 'for the reasons set forth in the State's response.'" *Chambers*, 2009 WL 2436683, at *2.

On appeal, the panel found:

13

"Chambers' assertions are not in the nature of those contemplated by K.S.A. 60-1507, that is, an illegal or unconstitutional sentence. Moreover, he is not entitled to a hearing to correct an illegal sentence under K.S.A. 22-3504. A K.S.A. 60-1501 petition is the proper mechanism for challenging the mode or conditions of an inmate's confinement, including administrative decisions made by the KDOC, and such a petition is to be filed in the county of confinement. See *Safarik v. Bruce*, 20 Kan. App. 2d 61, 66-67, 883 P.2d 1211, *rev. denied* 256 Kan. 996 (1994)." *Chambers*, 2009 WL 2436683, at *2.

So, while the ultimate issue of whether KDOC improperly withheld court-ordered jail credit was not resolved, *Chambers* confirmed that K.S.A. 60-1501 is the proper vehicle to raise such a claim rather than K.S.A. 60-1507. Yet, *Chambers* did not establish any relevant administrative procedure requirements when an inmate challenges the KDOC's application of court-ordered jail credit.

Gray

About two years after a panel of our court decided *Chambers,* another panel considered the case of *Gray v. Cline*, No. 105,519, 2011 WL 4035802 (Kan. App. 2011) (unpublished opinion). Gray appealed the district court's dismissal of his K.S.A. 60-1501 petition.

On August 4, 2005, Gray was sentenced to serve consecutive 30-month prison sentences in two Reno County cases. The next day Gray was transferred to the Barton County jail on a probation violation warrant. At his probation revocation hearing on August 8, 2005, the Barton County judge revoked Gray's probation and sentenced him to serve seven months concurrently with the Reno County cases. But rather than being sent to the KDOC to serve his Reno County sentences, Gray served seven months in the Barton County jail. Gray was accidentally released from custody on January 17, 2006, and then arrested and taken to the KDOC to serve his sentences on January 31, 2007. Gray's claim was that he was not awarded the seven months he spent in the Barton

14

County jail as credit against his sentences in his Reno County cases. *Gray*, 2011 WL 4035802, at *1.

Gray started making efforts to have his claim heard. One of those efforts involved trying to resolve the jail credit issue directly with KDOC, but that effort was unsuccessful:

"A November 5, 2008, letter from the KDOC's Sentence Computation Unit (SCU) to Gray's counsel detailed the jail credit Gray was awarded toward his sentence in 01 CR 783; indicated he was not awarded any credit toward his sentence in 05 CR 475; and stated that '[a]ny time after August 4, 2005 should be credited towards his Barton County case.' The court conducted a hearing on November 14, 2008, and entered its judgment summarily denying Gray's motion on August 7, 2009. Gray did not appeal." *Gray*, 2011 WL 4035802, at *1.

Other efforts followed. Over the next two years, Gray made motions in district court and continued to persuade the KDOC he was owed credit. Those efforts were unsuccessful. Then, on May 5, 2010, Gray filed the K.S.A. 60-1501 petition that was the subject of his appeal:

"On May 5, 2010, Gray filed the instant K.S.A. 60-1501 petition, once again arguing his liberty was unlawfully restrained as a result of the SCU's improper computation of his prison sentences. In its response, the KDOC sought dismissal on several grounds. The district court held a hearing on June 24, 2010, at which Gray appeared in person and with counsel. After hearing arguments of counsel, the district court ruled it lacked subject matter jurisdiction to hear Gray's petition because it was not filed within 30 days of the administrative action he was challenging." *Gray*, 2011 WL 4035802, at *2.

The district court held that it lacked subject matter jurisdiction to hear Gray's petition because it was not filed within 30 days of the administrative action he was challenging pursuant to K.S.A. 60-1501(b). The district court found SCU's letters of

November 5, 2008, April 21, 2009, and January 6, 2010, were administrative orders and Gray's failure to file his petition within 30 days of final action on those orders deprived the court of subject matter jurisdiction. The district court also noted that because "Gray had failed to appeal when his three prior attempts to obtain the same relief were denied in district court," it was "'extremely unlikely that any court has jurisdiction at this point to modify such rulings.'" *Gray*, 2011 WL 4035802, at *2.

On appeal, Gray argued that the district court erred in finding it lacked subject matter jurisdiction. The State argued that Gray's case "was properly dismissed because it was untimely, he failed to properly plead and prove exhaustion of administrative remedies, and he failed to appeal the other decisions denying his requests for the same relief." *Gray*, 2011 WL 4035802, at *2.

While the *Gray* panel did not explicitly find that Gray had exhausted his administrative remedies, it implicitly reached that result. It found that Gray had raised the issue of jail credit with KDOC, and in response, KDOC wrote Gray's defense counsel on November 5, 2008, denying the claim. The panel held that the KDOC response triggered the 30-day statute of limitation for Gray to file his petition pursuant to K.S.A. 60-1501(b). The panel did not find that Gray was required to exhaust any other administrative procedure, and in fact, Gray was penalized because he did not quickly move to file his case in court:

> "The essence of Gray's claim is that the SCU wrongfully computed his sentences when it did not grant credit for the time he spent in the Barton County jail. Gray is challenging the propriety of the initial determination of his jail credit, not the resulting conditions of his confinement. As a result, the SCU's November 5, 2008, decision regarding the calculation of Gray's sentences triggered the 30-day period for Gray to seek relief under K.S.A. 60-1501. Obviously, Gray's K.S.A. 60-1501 petition filed on May 5, 2010, was filed well-outside this deadline." *Gray*, 2011 WL 4035802, at *3.

16

Hooks

Following *Gray* was a decision of our court in *Hooks v. State*, 51 Kan. App. 2d 527, 349 P.3d 476 (2015). In *Hooks*, the court examined whether the KDOC properly applied Hooks' jail credit.

"Hooks asked the KDOC to apply his 208 days of jail credit to the 20-month sentence. The KDOC refused, stating it already had taken the 208 days of jail credit into account when computing his July 31, 2012, parole date from the indeterminate sentence.

"On March 11, 2013, Hooks filed a pro se K.S.A. 60-1501 petition in the district court alleging he was entitled to 208 days of jail credit against the 20-month sentence he received in case No. 10-CR-1650. The district court appointed counsel and ordered the State to file a response to Hooks' petition. The State answered, alleging that Hooks' petition should be dismissed for failure to provide proof of exhaustion of his administrative remedies. After the parties presented arguments at a November 27, 2013, hearing, the district court denied Hooks' petition. The court did not address the State's exhaustion argument but simply ruled that the KDOC correctly computed Hooks' sentence." 51 Kan. App. 2d at 528-29.

On appeal, the panel did not reach the merits of the exhaustion argument, finding "[b]ecause the State failed to object to the district court's failure to make findings of fact and conclusions of law with respect to the State's exhaustion argument, this issue is not properly preserved for appeal." 51 Kan. App. 2d at 529.

The panel went on to decide the merits of Hooks' claim:

"Having set forth the relevant facts and the applicable law, we now turn to the issue presented on appeal: whether Hooks is entitled to receive 208 days of jail credit against the 20-month sentence he received in case No. 10-CR-1650. We conclude that he is not. In Kansas, a defendant is not entitled to jail time credit toward a sentence when the

17

time at issue was spent serving a sentence in an unrelated case. *Denney*, 278 Kan. at 648." *Hooks*, 51 Kan. App. 2d at 532.

The consideration of jail credit has taken a different turn under the law since *Hooks*, but that is not relevant to our decision here. See *State v. Ervin,* 320 Kan. 287, 566 P.3d 481 (2025). *Hooks* is helpful as a reminder that issues with jail credit that require adjustment should be resolved by the district court:

> "Although we find no legal error by the district court in upholding the KDOC's decision to apply 208 days of jail credit against Hooks' indeterminate sentence, we do agree that the better practice would have been for the KDOC to refer the matter to the sentencing court when it discovered that correction of the journal entry was necessary with respect to the application of jail time credit. K.A.R. 44-6-106(c) ('If correction of a journal entry is necessary, the [KDOC] shall refer the matter to the sentencing court and notify either the county or district attorney and the defense attorney.')." *Hooks*, 51 Kan. App. 2d at 533.

Although the panel did not decide the issue of exhaustion, its finding is still notable in that it points out issues related to the application of jail credit that require a correction of a journal entry "shall" be referred to the sentencing court under K.A.R. 44-6-106(c). 51 Kan. App. 2d at 533. There is no mention in *Hooks* or K.A.R. 44-6-106(c) of any other administrative procedure other than referring the matter back to district court.

Spight

*Spight v. Heimgartner*, No. 113,286, 2015 WL 7191466 (Kan. App. 2015) (unpublished opinion), presented a set of facts quite similar to our present case. In *Spight*, the inmate argued that the KDOC was refusing to apply court-ordered jail credit. The sentencing journal entry indicated Spight had earned 720 days of credit, but he believed the KDOC was only applying 24 days. *Spight*, 2015 WL 7191466, at *1. Spight claimed to have sent a letter to the KDOC sentence computation unit, but the record did not contain the letter and there was no evidence of a response.

18

Spight then filed his K.S.A. 60-1501 petition in district court. The warden filed an answer and a motion to dismiss based on Spight's failure to exhaust his administrative remedies. Spight responded that sentence computation is not subject to the administrative procedures found in K.A.R. 44-15-101 et seq. Spight also argued that he satisfied the administrative procedures to the best of his ability by calling the sentence computation unit and writing a letter.

The panel never reached the issue of whether Spight exhausted his administrative remedies, because it found that the warden "does not brief how or why he believes Spight failed to exhaust his administrative remedies. Rather, the warden's sole contention is that this court lacks jurisdiction because after recognizing the warden raised the exhaustion issue, the district court failed to make findings or otherwise rule on it." *Spight*, 2015 WL 7191466, at *3. The panel declined to consider the warden's argument on exhaustion of remedies. "Given the limits on the warden's argument on this issue, we find that the warden failed to preserve this issue for appeal." *Spight*, 2015 WL 7191466, at *3. Ultimately, the panel decided the case on its merits and reversed and remanded "with directions for the KDOC to recalculate Spight's sentence in case No. 09 CR 2051 with the full 720 days of jail credit he was awarded in that case." *Spight,* 2015 WL 7191466, at *6.

Peterson

Schnurr cites *Peterson v. Schnurr*, 57 Kan. App. 2d 56, 447 P.3d 380 (2019), in support of his position. In *Peterson*, an inmate challenged KDOC's seizure of two newspapers that he had subscribed to. The panel noted that Peterson's allegations concerned the censorship of publications, a category of grievances under K.A.R. 44-15-101a(d)(2) that are not required to follow the administrative grievance procedures in K.A.R. 44-15-101. Because those administrative procedures did not apply, the panel held Peterson only had 30 days after the final administrative action on his grievance to file his

19

K.S.A. 60-1501 petition. "Because this was not an available administrative remedy for Peterson, the 30-day time limit was not tolled while he needlessly filed an administrative grievance. We affirm the dismissal." 57 Kan. App. 2d at 59. While *Peterson* does not pertain to jail credit grievances on its facts, it does confirm that if a particular grievance is not "grievable," in this case because it was specifically exempted in K.A.R. 44-15-101a(d)(2), the 30-day statute of limitation will not be tolled.

*Final Analysis*

There is no clear requirement under Kansas law that an inmate who believes the KDOC is refusing to follow a court order awarding jail credit must exhaust the administrative procedures found in K.A.R. 44-15-101. K.S.A. 75-52,138 requires that prior to filing a K.S.A. 60-1501 petition, an inmate "shall have exhausted such inmate's administrative remedies, established by rules and regulations promulgated by the secretary of corrections or by county resolutions, concerning such civil action." K.S.A. 75-52,138. But if our statutes and regulations do not "establish" such administrative remedies for a particular grievance, an inmate must be allowed to proceed with filing their petition. Talkington's grievance is neither specifically included as a grievance governed by K.A.R. 44-15-101a(d)(1) nor one specifically excluded under K.A.R. 44-15-101a(d)(2).

Whether exhaustion of administrative remedies is required when an inmate challenges the KDOC's application of jail credit has not been directly resolved by Kansas courts. While the issue has been raised several times, in *Hooks* and *Spight*, the panel did not reach the issue due to preservation, and in *Chambers,* the inmate used an improper vehicle to raise the claim—an action under K.S.A. 60-1507 rather than K.S.A. 60-1501. *Gray* appears to at least consider the issue, albeit in an indirect manner. We directly consider the issue here. Because there is no administrative procedure clearly required by statute or regulation, we find that akin to the holding in *Gray*, Talkington's only

20

requirement after receiving the response from KDOC was to file a K.S.A. 60-1501 petition within 30 days. The KDOC's response to Talkington's grievance is undated. Even if we assume Talkington received the response on the same day he filed the grievance, August 26, 2024, he filed his K.S.A. 60-1501 petition on September 20, 2024, and amended petition on September 23, 2024—both within the 30 days required by K.S.A. 60-1501(b):

> "(b) Except as provided in K.S.A. 60-1507, and amendments thereto, an inmate in the custody of the secretary of corrections shall file a petition for writ pursuant to subsection (a) within 30 days from the date the action was final, but such time is extended during the pendency of the inmate's timely attempts to exhaust such inmate's administrative remedies." K.S.A. 60-1501(b).

We also find that any further attempts by Talkington to exhaust his administrative remedies would have been futile. When Talkington raised his jail credit issue by filing his Inmate Request to Staff Member form, the KDOC's response was "sentence computation is not grievable." We take the KDOC at its word.

> "'More importantly, a party is not required to seek an administrative remedy when the remedy is known to be inadequate.' *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 24 P.3d 128 (2001). In *Pierpoint*, an inmate made two requests for the assistance of counsel at a disciplinary hearing, which were both denied. The inmate subsequently filed a 60-1501 petition without requesting an agency hearing, and the KDOC responded by claiming that the inmate had failed to exhaust his administrative remedies. The court found that, under these circumstances, there was no reason to believe that another request for the presence of counsel would have yielded a different result.

> "The court held the inmate was not required to exhaust his administrative remedies and noted that '[e]xhaustion of administrative remedies is not required when administrative remedies are inadequate or would serve no purpose.' 271 Kan. 620,

21

Syl. ¶ 2. See *State ex rel. Pringle v. Heritage Baptist Temple, Inc.*, 236 Kan. 544, 549, 693 P.2d 1163 (1985)." *McComb v. State*, 32 Kan. App. 2d 1037, 1042, 94 P.3d 715 (2004).

The KDOC specifically told Talkington "sentence computation is not grievable." It did not address the merits of his claim, and it offered no explanation or support for its decision. Requiring Talkington to pursue the administrative procedure in K.A.R. 44-15-101 would serve no purpose, and under these circumstances, there was no reason to believe such efforts "would have yielded a different result." 32 Kan. App. 2d at 1042.

We find that the district court erred in summarily finding that Talkington failed to exhaust his administrative remedies prior to filing his K.S.A. 60-1501 petition. Because we reverse on this issue we need not consider Talkington's due process claim. We therefore reverse the district court's order and remand for the district court to "issue a writ of habeas corpus, appoint counsel, order the respondent to file an answer, hold a hearing, and determine the cause." *Denney v. Norwood*, 315 Kan. 163, Syl. ¶ 5.

Reversed and remanded with directions.